THE STATE, DAVID HAMPSON, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

THE STATE, ABSALOM B. WOODRUFF, PROSECUTOR, v. THE SAME.

1. An ordinance to take up, &c., Fulton street, and an ordinance to grade the same having been passed, &c., but without the notice required by the ninety-ninth section of the supplement to the charter of the city of Paterson, approved March 25th, 1869—*Held*, that however fatal the objection as to the want of notice might have been if promptly taken and acted upon by the prosecutors, it cannot be allowed to prevail after considerable delay, under circumstances rendering it probable that they were aware of the inception and progress of the work, and especially after the improvement has been completed and paid for by the city.

2. The expense of grading, &c., under the ninety-eighth section of said supplement, is to be assessed, &c., by commissioners possessing the qualifications required by sections 104 and 110, and on the same principle of apportionment adopted by sections 102 and 104.

3. The commissioners having reported that they had made a just and equitable assessment, &c., among the property owners, &c., according to the advantages, or benefits, &c.; but it being manifest from the schedule accompanying the report as well as from the testimony, that there was in fact no exercise of judgment by the commissioners, their assessment upon each owner being governed solely by the extent of his frontage—*Held*, that an assessment so made cannot be sustained.

4. By the said amended charter, all contracts, &c., are to be given to the lowest bidder; the contract for grading, &c., in this case was awarded to H., the lowest bidder, at fifteen cents per cubic yard; by the contract as reduced to writing and executed by H. and the city, the grading was to be done "for the price and sum of fifteen cents per cubic yard for earth excavation, and two dollars and fifty cents per cubic yard for all rock excavation," the contract being so drawn in pursuance of an ordinance, the second section of which provides as follows: "That hereafter, when a contract is made by the city of Paterson, for grading streets or excavating earth, and no price is mentioned for rock work, there shall be paid to contractors two dollars and fifty cents for each cubic yard of rock found, provided said rock shall exceed one cubic yard in size."—*Held*, that this section of the ordinance being in direct conflict with a plain provision of the charter, both it and the written agreement made in pursuance of it, are utterly void.

Argued at November Term, 1872, before Justices DEPUE, VAN SYCKEL and WOODHULL.

For the prosecutors, *John Hopper* and *A. B. Woodruff*.

For the defendant, *H. A. Williams*.

The opinion of the court was delivered by

WOODHULL, J.   These writs bring up for review a certain assessment of expenses for grading Fulton street, in the city of Paterson, together with all the proceedings relating to the said grading and assessment.

It is admitted on the part of the defendants that these proceedings were had and taken under the act for the further revising and amending the act to incorporate the city of Paterson, approved March 25th, 1869, (*Laws*, 1869, *p.* 706,) and they are attempted to be justified as being in substantial compliance with the provisions of that act.

The reasons assigned for setting aside this assessment, relate 1st, To the validity of the ordinance by virtue of which the grading was done; 2d, To the qualifications of the commissioners; 3d, To the principles upon which the assessment was made; and 4th, To the fairness and the amount of the assessment.

' A petition from property owners on Fulton street, (Mr. Woodruff, the prosecutor of the second writ above named, being one of them,) for the grading of said street from Totowa to Union avenue, was presented to the board of aldermen, and referred to the street committee July 26th, 1869.

November 8th, 1869, that committee reported, recommending the grading as petitioned for, and their report was adopted.

November 15th, 1869, the contract to grade Fulton street was awarded to T. F. Hoxsey, at fifteen cents per cubic yard.

November 22d, 1869, the contract, &c., was read, approved, and the mayor requested to sign the same.

January 10th, 1870, an ordinance to take up, vacate and relay Fulton street, from Totowa avenue to Union avenue, was read, &c., and passed unanimously. On the same day an ordinance to grade Fulton street was read and passed unanimously.

The first objection to the ordinances of January 10th, 1870, is, that they were introduced and passed without notice. The ninety-eighth section of the act of 1869, makes it lawful for the board of aldermen, whenever in their opinion the public good requires it, to lay out, vacate or alter streets by ordinance, and also to order any street to be graded, &c.; but the next section imperatively forbids the introduction of any such ordinance, unless public notice shall have been given of the intended improvement, &c., and published as therein directed, briefly describing the intended improvement, and requesting all persons objecting to the same to present their objections in writing to the board of aldermen or the city clerk, on or before ten days from the date of such notice. (*Laws*, 1869, *p.* 743, § 99.)

Although the return called for is of all the proceedings touching and concerning the said grading and assessment, there is nothing in the return sent up, nor in the testimony, to show that the notice required by the act, or any notice at all, was given, or attempted to be given, before the passage of these ordinances.

The fact of notice being fundamental to these proceedings, and one peculiarly within the knowledge of the defendants, the burden of making it out, or at least of disclosing facts and circumstances from which it might be fairly inferred, rested upon them.

If notice was in fact given, the means of proving it must have been abundant and easily accessible.

Under such circumstances, the total absence of proof raises the strongest presumption that the required notice was never given; and such is the clear result of all the evidence before us in these cases. But although we cannot avoid the conclusion that, to this extent, the prosecutors are sustained in their

insistment as to the want of notice, we are satisfied that they are not now in a position to take advantage of it.

There can be little doubt that they were aware, almost from the first, of the inception and progress of the proceedings now before us. One of them had joined in a petition for the grading of Fulton street, as early as July, 1869. It is true that this street was subsequently vacated and relaid. But long after this, May 2d, 1870, the prosecutor referred to, Mr. Woodruff, sent to the board of aldermen a second petition relating to the proposed improvement. This was about a month after the completion of the work for which the assessment in question was made. The commissioners finished the assessment, and made their report May 21st, 1870, and the writs in these cases were not issued until July 8th, 1870.

However fatal the objection now under consideration might have been if promptly taken and acted upon, it cannot be allowed to prevail after so much delay, and especially after the improvement has been completed and paid for by the city.

It is further objected to the assessment in this case, that the commissioners by whom it was made did not possess the requisite qualifications.

The second subdivision of the ninety-eighth section empowers the board of aldermen to order and cause any street, or section of a street, to be graded, &c., at the expense of the owners of lands and real estate on the line of said street, or section of a street, and at the expense of the property benefited thereby. To effect this, there must of course be an assessment, and the legislature no doubt intended it to be made by persons possessing the qualifications presented in another part of the charter, for those who are required to perform similar duties.

The 104th section requires the board of aldermen to appoint, for the purposes of any assessment for opening, altering or widening a street, three judicious, disinterested freeholders, residents of said city, commissioners, no two of whom shall be residents of the same ward.

The 110th section provides, that all commissioners of

assessment, appointed by or under this act shall, before they proceed to the duties of their appointment, subscribe and take an oath before some person lawfully authorized to administer oaths, faithfully, honestly and impartially to perform the duties required of them.

All that appears with respect to the qualifications of the commissioners in this case is found in their report, and in the following language: "We, the undersigned assessors, appointed by the board of aldermen of the city of Paterson, &c., having been first duly sworn according to law," &c.

Taking the case as it stands, instead of showing that those commissioners possessed all the required qualifications, it affords no reasonable assurance that they possessed a single one of them.

In such a case, the maxim, *quod non apparet, non est,* fairly applies.

The objection to the assessment on this second ground is sustained, and is fatal.

It is further objected to this assessment that it was made by the commissioners without any exercise of their judgment, and on a wrong principle. The grading was to be done "at the expense of the owners of land and real estate on the line of said street, &c., and at the expense of the property benefited thereby." The language of this clause is to be understood as implying the principle of apportionment recognized and adopted in sections 102 and 104, viz.: that the assessment shall be made upon the owners of the lands, &c., and upon the property benefited, in proportion to the benefit to each lot or parcel on the line of such street.

The commissioners certify and report that they have made a just and equitable assessment of the expenses for grading Fulton street, &c., among the property owners on such street, according to the advantages or benefits derived from such improvement as nearly as may be, &c.

Now, while this report seems to indicate that the commissioners did exercise their judgment, as they were bound to do, in order to determine the benefits, &c., and standing alone might perhaps be regarded as substantially complying with

the requirements of the charter, it cannot but be manifest, from the schedule annexed to the report, and forming a part of it, and from the testimony in the case, that there was in fact no such exercise of judgment by the commissioners, their assessment upon each owner being governed solely by the extent of his frontage. They simply divided the whole expense by the whole number of lineal feet fronting on the street to get the rate per foot, and then to ascertain the amount each owner was to pay, merely multiplied the number of feet in his frontage by the rate per foot.

The testimony of Mr. Goetchius, the city surveyor, and one of the commissioners, confirms what is sufficiently apparent on the face of the report and schedule.

In answer to the question, "on what principle were the assessments made?" he answers: "the assessments were made according to a system followed for years in this city, assessing equally per lineal foot fronting on the street."

Such an assessment does not, in any fair sense, meet the requirements of the charter, and cannot therefore be sustained.

A fourth objection urged against this assessment relates to the contract under which the work was done, and to the amount of the assessment.

By the 112th section of the amended charter, it is enacted "that all contracts for doing the work or furnishing the materials for the improvements provided for in the act, shall at all times be given to the lowest bidder, he or they giving ample security for doing the same according to contract."

The report of the street committee, recommending the grading of Fulton street, &c., has been referred to. At the same time, November 8th, 1869, this committee recommended that they should be directed to advertise for proposals for said work. This recommendation was adopted. Whether proposals were advertised for or not, does not appear. It does appear however that just one week after the adoption of this report, and almost two months before the ordinance for grading Fulton street was passed, the contract to grade that street was awarded to T. F. Hoxsey at fifteen cents per cubic yard. One week later, November 22d, 1869, a contract was

drawn up, executed by Mr. Hoxsey, and approved by the mayor, by the terms of which Mr. Hoxsey was to grade Fulton street, &c., " for the price and sum of fifteen cents per cubic yard for earth excavations, and two dollars and fifty cents per cubic yard for all rock excavation." This strange departure from the contract as awarded is explained by an ordinance concerning contracts, passed July 13th, 1869.

The second section of this ordinance provides as follows : " That hereafter, when a contract is made by the city of Paterson for grading streets or excavating earth, and no price is mentioned for rock work, there shall be paid to contractors for all rock work the sum of two dollars and fifty cents for each cubic yard of rock found, provided said rock shall exceed one cubic yard in size."

The charter, it will be remembered, imperatively requires all contracts, at all times, to be given to the lowest bidder. But this ordinance provides, that for a certain kind of work there shall be paid to the contractor a fixed price, without reference to any proposals or bidding, and no matter how many men might be found to do the same work for less money. The board of aldermen had no authority to pass such an ordinance. The second section is in direct conflict with one of the plainest provisions of the charter, and breaks down one of its wisest safeguards against extortionate charges and burdensome assessments. This section of the ordinance, and the written agreement made in pursuance of it, are not merely voidable, but utterly void and without effect.

It appears that the whole excavation amounted to seven thousand and thirty-five cubic yards.

This, at fifteen cents per cubic yard, will give the sum to which Mr. Hoxsey is entitled under his contract with the city, and to this amount any future assessment must be limited.

For the reasons above stated, the assessment in this case must be set aside with costs, and new commissioners be appointed in accordance with the charter.

CITED in *State, Ropes, pros., v. Essex Public Road Board,* 8 *Vr.* 335 ; *State, Graham, pros., v. Paterson,* 8 *Vr.* 380 ; *State, Youngster, pros., v. Paterson.* 11 *Vr.* 244.