PHILIP PHIFER, PROSECUTOR, v. CITY OF BAYONNE AND MONTROSE CONTRACTING COMPANY, INCORPORATED, DEFENDANTS.

Argued March 23, 1929—Decided June 18, 1929.

Before Justice KALISCH, sitting by virtue of the statute.

For the prosecutor, *Patrick J. O'Connell* (*John Drewen,* of counsel).

For the city of Bayonne, *James Benny.*

For the defendant company, *Aaron L. Melniker.*

The opinion of the court was delivered by

KALISCH, J. The prosecutor, a taxpayer of the city of Bayonne, seeks to set aside a contract awarded by the board

of commissioners of said city to the Montrose Contracting Company, Incorporated, for the lowering of the existing thirty-inch cast iron submarine pipe under the waters of the Hackensack river. There were four bidders, of which the Montrose Contracting Company was the lowest on the alternate bid as advertised, its bid being $284,676. The next lower bidder was the Merritt-Chapman & Scott Corporation, its bid being $303,485. None of the unsuccessful bidders is contesting the validity of the award. The prosecutor, as a private citizen and taxpayer, assails the validity of the contract on three grounds, which taken together present the single question, whether or not the contract was awarded to the lowest bidder as a result of fair and competitive bidding.

For the prosecutor it is first contended that the specifications do not invite nor permit fair and open competition, in that the same standard of competition is not set up for each bidder. It is asserted that the specifications not only permit bidders to submit bids on the specifications adopted by the city, but also bids based on each bidder's particular plan, and that the bid which resulted in an award by the board of commissioners to the Montrose Contracting Company was upon the particular plan submitted by that company, and for which no specifications had been approved or adopted by the city, and upon which all the bidders were not invited or permitted to compete.

This contention is not borne out by an examination of the specifications and the testimony taken in the cause. The specifications are as definite as was practicable, from the character of the work which was to be performed and the quality and quantity of the work, and the materials to be furnished. The specifications give precise and full information to prospective bidders, as the nature of the contemplated work permits. No more than that can reasonably be required. It is sufficient and meets with legal requirements, when it appears, as it does in this case, that the specifications furnish the same information to all prospective bidders, so that there may be intellligent bidding. *Schwitzer* v. *Board of Education of Newark*, 79 *N. J. L.* 342.

It is a significant circumstance that none of the unsuccessful bidders is here complaining of any unfairness in the specifications.

Nor do I perceive any merit in the contention of the prosecutor, that the specifications unlawfully permit each bidder to set the length of the time within which to complete the contract. There was nothing in the specifications submitted for bids which required the proposed work to be done within any particular time, but impliedly, within a reasonable time. All bidders were treated alike in this respect. The various bids received from the bidders stated the time within which they would do the work. While it is true that section "C" of the specifications, coupled with the contract, recites that the time limit is essential to, and of the essence of the contract, it is obvious from the context of the section that the provision refers to the penalty to be paid by the contractor who obtains the contract, and who fails to finish the work within the time fixed by the contract.

On behalf of the prosecutor it is objected that the bids were in the alternative. This is not a valid objection. Alternative bids are permissible. *Johnson* v. *Atlantic City,* 85 *N. J. L.* 145 (at *p.* 147).

It is further urged against the validity of the award that the bid of the Montrose company was unbalanced. The term "unbalanced" seems to comprehend a bid based upon nominal prices for some work and enhanced prices for other work. In the instant case, the bid of the Montrose company was five cents unit price on four hundred thousand cubic yards. It was stated in the specifications that "the estimated quantities to be used as a basis for comparing bids are as follows: There is subsequently absolutely no guarantee that the actual quantity of the work will correspond therewith—(1) Submarine excavation, four hundred thousand cubic yards."

It appears from the testimony in the case that there was less than four hundred thousand cubic yards, in fact, only about two hundred thousand cubic yards. While this is a wide discrepancy between the engineer's estimate and the actual number of cubic yards necessary to be excavated,

nevertheless, unless there was some fraudulent conduct on part of the engineer, and the Montrose company, by which the Montrose company made the nominal bid of five cents a cubic yard in order to attain the status of lowest bidder, I do not see how the validity of the bid can be successfully challenged.

It is not any kind of an irregularity in specifications of proposed public work to be done that will have the effect of voiding the award. The irregularity must be of a substantial nature—such as will operate to affect fair and competitive bidding. I cannot say from a reading of the testimony that there is convincing proof that no such opportunity was presented by the specifications. It must be presumed that the bidders familiarized themselves with the requirements of the work contemplated to be done and were aware of the uncertainty of the correctness of the estimate of the engineer as to the amount of cubic yards necessary to be excavated, &c. It is difficult to comprehend how prospective bidders could be misled by the specifications, or in what respect competitive bidding was hindered or restricted, for the proposals contained instructions to bidders, to wit, section "H" of such proposals, on page six, *inter alia,* provides: "All bidders for work under this contract are required before submitting bids to examine the site of the work and adjacent premises and the various means of approach to the site and to make all necessary investigations in order to inform themselves thoroughly as to the character and magnitude of all work involved in the complete execution of the contract, also as to the facilities for delivering and for handling material and plant at the site and the conditions and difficulties that will be encountered in the performance of the work specified herein" * * * section "J" provides: "All bids will be prepared on the basis of the engineer's estimate of the quantity of work to be done. The estimated quantities named in the schedule are not to be considered by contractors as absolute quantities to complete the work. They are believed to be close approximations and are to serve the purpose of making a comparison of the bids submitted. Bids which are obviously unbalanced will be rejected." * * *

In *Walter* v. *McClellan,* a case similar in its prominent features with the case *sub judice* (113 *App. Div.* 295), Mr. Justice McLaughlin, speaking for the court, said: "The bidders were notified that the quantities were approximate only, being given as a basis for the uniform comparison of bids. * * * The bidders were required to satisfy themselves by a personal examination of the location of the proposed work. * * * They knew what would be required and what would have to be done in order to comply with the contract and for which they would be paid a stipulated price. This furnished just as much a standard of comparison as would bids for a lump sum. One bidder might have greater intelligence than another and to this extent have an advantage but if the work had been let for a lump sum he would have had the same advantage, and this advantage is the reward which intelligence always brings."

The court also said: "The fact that McAethur Bros. Company and Winston & Company made a nominal bid on certain items does not subject them nor the aqueduct commissioners to any criticism. The reason which induced them to make such bids was a matter purely personal to themselves. There is nothing to indicate that there was any collusion between the successful bidder and the chief engineer of the commissioners." This case was affirmed without an opinion by the New York Court of Appeals in 190 *N. Y.* 505.

In the cited case in the court of first instance, a motion was made to restrain the carrying out of a contract made by the aqueduct commissioners for the construction of a reservoir, the language used by the trial judge is peculiarly applicable to the situation here, where he says: "Nor is there any substantial ground for this motion in the fact that an 'unbalanced' bid was accepted. The term being used to describe a bid based on nominal prices for some work and enhanced prices for other work. Such a bid is not *per se* fraudulent nor unlawful, and where, as here, there is shown to be no material enhancement of the gross price and the items are fairly identified, the contract is not reasonably assailable."

The execution of the contemplated work involves the expenditure of a large sum of money by the municipality. A comparison of the bids received shows that the Montrose company was the lowest bidder by a considerable margin. If the award is set aside there is no reasonable assurance that the work can be done for any less sum than that bid by the Montrose company; in fact, a call for new bids may result in a higher bid than the one in question. It would be unfair to the taxpayers to subject the municipality to such risk, unless it is made to, obviously, appear that fair competitive bidding was clearly ignored in the reception and consideration of bids, and such a situation is wholly absent here.

The writ is dismissed, with costs.