62 N.J. Super. 476 (1960)
163 A.2d 379
GEORGE ARMANIACO, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF CRESSKILL, DEFENDANT, AND D. STAMATO & CO., INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1960.
Decided July 11, 1960.
*478 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Eugene L. Dinallo argued the cause for appellant (Messrs. Heller & Laiks, attorneys; Mr. Eugene L. Dinallo, of counsel).
Mr. William V. Breslin argued the cause for plaintiff-respondent (Mr. Francis B. Rusch, on the brief).
Mr. William E. Bannon argued the cause for defendant-respondent, Borough of Cresskill.
The opinion of the court was delivered by HANEMAN, J.A.D.
Defendant D. Stamato & Co., Inc. (Stamato) appeals from a judgment of the Law Division in favor of plaintiff, a citizen and taxpayer of the Borough of Cresskill (borough), setting aside a resolution of said borough awarding a contract for the construction of a section of a municipal sewer system to it.
*479 Prior to October 7, 1959 the borough advertised for bids for the sewer project. Under the terms of the specifications, each bidder was required to submit unit price bids on 34 of the 35 items involved in the work to be done. The quantities required for the items were estimated. The total price, computed by multiplying the estimated quantities by the unit price bid, formed the basis for a comparison to determine the low bidder. The "Information for Bidders" provided:
"If so ordered by the Engineer, timber sheeting and bracing shall be left in place to avoid undermining or otherwise endangering the work or adjacent structures."
And again:
"Well-points are to be used only with the written approval of the Engineer."
In relation to balanced bidding it was provided that:

"Balanced Bidding

Any bid which, in the opinion of the Engineer, is obviously unbalanced, may be rejected. Where such unbalanced bids are not rejected the Borough may at its discretion for purpose of partial payment pay actual cost plus 15%, the difference between the partial payment price and the bid price shall become payable at the time of the final payment."
One of the items included in the specifications, rock excavation, was estimated to require the removal of 2,100 cubic yards for which, unlike the other 34 items listed in the specifications, a predetermined unit price of $20 per cubic yard was fixed by the borough. Hence, all bids submitted necessarily included the figure of $42,000 for rock excavation.
On October 7, 1959 Stamato submitted an overall total bid of $668,774.67. M.Q.M. Construction Co. (M.Q.M.) submitted the second lowest bid of $680,349.50. For two of the items on which unit price bids were required, i.e., *480 timber sheeting to be left in place, and for well-pointing, Stamato and M.Q.M. bid as follows:

 D. Stamato M.Q.M Constr.
Item Description Unit-Amount Unit-Amount
 3 Timber sheeting left
 in place (417 MFBM) .01-$4.17/ $200-$83,400
14A Trench, Well-Pointed
 0'-12' deep (9700 lin.
 ft.) .01-97.00/ 2- 19,400
14B Trench, Well-Pointed
 12.01'-16' deep (1100
 lin. ft.) .01-11.00/ 6- 6,600

It is admitted that the actual unit cost of these items is substantial and the bids by Stamato merely nominal.
On October 13, 1959, M.Q.M. sent a letter to the Mayor and Council of Cresskill protesting the award of the contract to Stamato. When, on October 20, 1959, all bidders were granted the opportunity to be heard on the protest, only counsel for defendant and M.Q.M. appeared. Following the hearing, the mayor and council, by resolution, awarded the contract to defendant. M.Q.M. originally joined with the plaintiff herein in an effort to set aside the municipal action. However, in recognition of the fact that it is now well settled that an unsuccessful bidder has no standing to attack the specifications, Camden Plaza Parking v. City of Camden, 16 N.J. 150 (1954), M.Q.M. consented to a dismissal as to it.
Plaintiff's complaint contested the validity of the award of the contract upon the grounds that (1) Stamato's bids for sheeting and well-pointing constituted unbalanced bidding, and (2) the fixed price for rock excavation was violative of N.J.S.A. 40:50-1. The pretrial order does not mention the well-pointing.
Plaintiff conceded that there was no fraud or collusion between Stamato and any of the borough officials.
The trial court found for plaintiff principally upon a conclusion that the specifications did not set up a common *481 standard for competition in relation to the sheeting to be left in place and the well-pointing, adverting to the difference in the unit prices bid for these items by Stamato and M.Q.M.
Plaintiff argues for affirmance upon the grounds that, (1) Stamato furnished an unbalanced bid, by its prices for sheeting left in place and well-pointing, which is of such a nature as to be conducive to fraud and collusion, and (2) the set price for rock excavation violates N.J.S.A. 40:50-1. (Defendant municipality asks that all issues briefed be disposed of so that the legality of the contract may be settled in all respects).
At the outset it should be recognized that the basic policy of the bidding statute, N.J.S.A. 40:50-1, which requires contracts for the performance of public work involving the expenditure of money in excess of $2,500 to be let upon competitive bidding solicited through public advertisement, is the encouragement of competition, which in turn works to protect the public coffers and prevent chicanery and fraud in public office. Any stifling of competition undermines the policy of the act. Arthur Venneri Co. v. Paterson Housing Authority, 29 N.J. 392, 403 (1959). The bidding statutes should be construed with sole reference to the public good, and they should be rigidly adhered to by the courts. Hillside Twp. v. Sternin, 25 N.J. 317, 322 (1957).
We shall proceed to consider the arguments in the order above set forth.

I.
Where the types of construction are largely standardized and where a variety of operations is required which make it impracticable to break down the work required under a construction contract into units, it is generally customary to award contracts on a lump sum bid. On the other hand, when the work requires large quantities of relatively few types of construction and the volume of work cannot be *482 determined in advance, resort is had to the unit price form of bid. The advantage of the unit type bid under the circumstances referred to is that a contractor and municipality are not obliged to gamble on uncertain conditions and know in advance the price they will, respectively, receive and be obligated to pay for various extra items. See Engineering Contracts and Specifications, Robert W. Abbett (2d ed. 1948), p. 53.
An unbalanced unit price bid is one where one or more of the items bid does not carry its share of the cost of the work and the contractor's profit. Such bids are admittedly susceptible of fraud and collusion and carry the additional danger of placing an irresponsible bidder in a position of bidding higher on the earlier work to be done under the contract and lower on the latter work. Such a bidder could, after having taken his profit out of his early payments on a job, fail to complete the work called for. One control of such dangers is by including a provision in the specifications, as here, for the permissive rejection of unbalanced bids.
The justification of the unbalanced bid lies in the fact that the expenses of mobilizing the construction plant, bringing equipment and materials to the site, and the general costs of getting the work started are appreciable. These items usually do not appear in the bid and, therefore, are liquidated only as the work on the bid items progresses. This causes a hardship to the contractor in that his working capital is unnecessarily tied up in the work, without compensation, and may result in a failure to bid, thus reducing competition.
In Frank Stamato & Co. v. City of New Brunswick, 20 N.J. Super. 340, 344 (App. Div. 1952), the facts were remarkably similar to those here present. The specifications there provided that:
"Rock excavation shall comprise such ledge rock as in the opinion of the Engineer requires blasting, and boulders of one-half cubic yards or more in volume."
*483 And again:
"When, in the opinion of the Engineer, timber sheeting and bracing, furnished and placed under Items 1, 5 or 6 should be left in place to avoid undermining, or otherwise endangering the work or adjacent structures, payment will be made under this Item for such timber sheeting and bracing as is ordered left in place at the price bid per thousand board measure under this Item."
The prices bid for these two items were as follows:

 "Item 7  Rock Excavation
 Unit Price Bid on Estimated
 Per Cu. Yd. 5000 Cu. Yds.
 A. Cestone Company ........ $ .01 $50.00
 Frank Stamato & Co. ....... 5.00 2,500.00
 Bidder M .................. 3.00 15,000.00
 " A .................. 20.00 100,000.00
 " L .................. 1.00 5,000.00
 " V .................. 10.00 50,000.00
 Item 8  Timber Sheeting Left in Place
 Unit Price Bid on Estimated
 Per M f. B.M. 50 M ft. B.M.
 A Cestone Company ......... .01 .50
 Frank Stamato & Co. ....... 20.00 10,000.00
 Bidder M .................. .01 .50
 " A .................. 3.50 17,500.00
 " L .................. 50.00 25,000.00
 " V .................. .01 .50"

In sustaining the award of the contract to A. Cestone Company, the court said, at p. 344:
"An unbalanced bid comprehends a bid based on nominal prices for some work and enhanced prices for other work. The mere fact that a bidder has submitted an unbalanced bid, does not automatically operate to invalidate an award of the contract to such bidder. There must be proof of collusion or of fraudulent conduct on the part of such bidder and the city or its engineer or other agent, or proof of other irregularity of such substantial nature as will operate to affect fair and competitive bidding. Phifer v. Bayonne, 105 N.J.L. 524 (Sup. Ct. 1929); Walter v. McClellan, 113 App. Div. 295, 99 N.Y.S. 78 (App. Div. 1906), affirmed 190 N.Y. 505, 83 N.E. 1133 (Ct. App. 1907). In the absence of fraud, corruption or abuse of discretion, the determination of the *484 proper officers in making an award of a contract will not be disturbed by the court. Fisher v. Longport, 136 N.J.L. 217 (Sup. Ct. 1947); 10 McQuillin, Municipal Corporations (3rd ed. 1950), § 29.83.
The only provision in the specifications concerning unbalanced bids is: `Bids which are obviously unbalanced may be rejected.' This is not a prohibition against unbalanced bids."
None of these elements which would mitigate against Stamato's bid being here present, we conclude that the award was not invalid because the bid was unbalanced.

II.
There was considerable testimony that it has been common practice among municipal engineers in the section of the State where the borough is located, to fix the unit price for rock excavation where, as here, the exact amount that will be required is practically impossible to determine. Custom, however, cannot be relied upon to vary the terms of an uambiguous statute. Weinacht v. Board of Chosen Freeholders of Bergen County, 3 N.J. 330 (1949). Although fraud and collusion were not alleged in the instant case, their absence does not preclude judicial remedy, i.e., municipal action can be vacated when it amounts to a fraud on the bidding statute even in the presence of good faith. Asbury Park Press v. City of Asbury Park, 23 N.J. 50 (1956).
This rationale intends to enforce the statutory provisions designed to minimize the possibilities of fraud or collusion. See Hillside Twp. v. Sternin, 25 N.J. 317, 325 (1957).
Defendants maintain that the municipality must fix the unit price of an item as uncertain as rock excavation or face the possibility of financial catastrophe. The argument proceeds as follows: Unit price bidding and unbalanced bidding are now permitted by law; the risk is that a successful overall low bidder will submit an extremely high unit price for rock excavation, compensating therefor with low bids on other items; if the amount of rock actually *485 encountered greatly exceeds the amount estimated, the result will be serious financial loss to the municipality.
Even if the above argument is conceded to be meritorious, the remedy advocated is nevertheless in conflict with the policy of the bidding statute  unstifled competition. The adoption of the established custom urged herein must come from the Legislature and not from the courts.
It is conceded by all parties, and properly so, that if the rock excavation were the sole item involved in the contract, the fixing of a unit price therefor clearly would violate the terms of N.J.S.A. 40:50-1. Defendants, however, argue that in the instant case the 34 additional items for which no unit price was fixed provide sufficient room for public competition for the job as a whole. The predetermined price for the rock excavation totaled $42,000.
10 McQuillin, Municipal Corporations, § 29.30, p. 271, n. 61 (1950) reads:
"The municipality, if required to let contracts on competitive bids, cannot fix a definite price for a substantial part of the work to be let to the lowest bidder."
See also 63 C.J.S., Municipal Corporations, § 998, p. 574 (1950).
In Matter of Merriam, 84 N.Y. 596 (Ct. App. 1881), the price for rock excavation had been fixed by the commissioner of public works. Appellant's counsel therein claimed, as is claimed in the case sub judice, that the competitive bidding statute only required that the work as a unit should be submitted to competition, and when this is done in good faith the fact that certain prices for certain items, less than the whole, have been fixed does not destroy competition; it simply transfers it to such items which are directly submitted to competition. It was further urged that such had been the uniform practice for many years in those instances where it would be difficult to ascertain the quantity of rock excavation beforehand. The New York court held, at page 603, that:
*486 "These suggestions are not without force, and while there is strong ground for claiming that when the price fixed for one or more items is fair and reasonable and there is no evidence of fraud or extravagance, and the quantity could not be ascertained without a considerable expenditure of money, and that this could be done in some instances consistently with the interests of the public in view, and with the statute and ordinances we are, upon the whole, of the opinion that to carry out the intention of the law to award contracts to the lowest bidder, it is requisite that the quantity of rock excavation, as near as possible, should be stated in the proposals, and that fixing the price for the same was in disregard of the law and in violation of the statute and the ordinance * * *."
The court in Merriam, after referring to several prior New York cases, concluded that they stood for the proposition that when the price was fixed for rock excavation, a material and important part of the work, it was withheld from competition in violation of the statute. (See Matter of Mahan, 20 Hun (Sup. Ct. N.Y.) 301 (1880), affirmed 81 N.Y. 621 (Ct. App. 1880); Matter of the Manhattan Savings Institution, 82 N.Y. 142 (Ct. App. 1880). In conclusion, the court said, 84 N.Y., at p. 605:
"[T]he intention of the law-makers was to enforce a submission of every important item for competition, naming the quantity so far as it could reasonably be ascertained." (Emphasis supplied)
It cannot be said that the $42,000 item for rock excavation was not an important part of the entire job. For a case distinguishable upon its facts, but in point on the application of the policy considerations provoked by our bidding statutes, see State, Hampson, Pros v. Mayor and Aldermen of Paterson, 36 N.J.L. 159 (Sup. Ct. 1873).
It is interesting to note that if submitted to free competition, the testimony disclosed that the price of rock excavation could vary from $10 to $28 per cubic yard. One of defendants' experts, Ronald B. Brown, admitted that if there were competitive bidding for the rock excavation, the price probably would have been less than $20 per cubic yard.
*487 Moreover, again assuming the validity of defendants' argument in justification of the fixing of a unit price for rock excavation, there are at least two alternative solutions, both within the statutory framework, which would avoid the catastrophic results anticipated by the borough. First, the municipality could have set $20 per cubic yard as the maximum price it would consider, leaving the entire range up to the $20 open for competitive bidding. Second, it could have reserved, as it did herein, the right to reject unbalanced bids. The rejection of a bid with an extremely high unit rock excavation price would have precluded the feared evil. The provision for a set price for rock excavation under the facts here present is invalid.
The result attained by the trial judge was correct, although not for the reasons he stated. We therefore affirm the judgment. Leitner v. Braen, 51 N.J. Super. 31 (App. Div. 1958).
CONFORD, J.A.D. (concurring).
I agree with the court in affirming the judgment under appeal, and with its assignment as a reason for the determination the fixing of a unit price for rock excavation in the specifications. I would add as a ground for the result, however, the position taken by Judge Waesche in the Law Division  that the nature of the specifications in respect of item bids for timber sheeting left in place and well-pointing, taken together with the nominal bids submitted by Stamato, the successful bidder, on those items, operated in effect to eliminate a common standard of competition for the award as a whole, in violation of accepted principles of public bidding under statutory regulation thereof. Camden Plaza Parking v. City of Camden, 16 N.J. 150, 159 (1954). I am of the view, further, that to tolerate the result of the bidding in this case is to open the door to fraud and collusion; and our cases emphasize that material departures by bidders from the statute or from the lawful terms of invitations for bids on public contracts are to be struck down not only where actual fraud *488 or collusion is shown, but where the practice indulged is one clearly conducive to fraud, collusion, or defeat of the principles of fair and open competitive bidding. See Hillside Twp. v. Sternin, 25 N.J. 317, 325-326 (1957).
The specifications in the present case call for unit bidding on all items designated, including timber sheeting left in place and well-pointing. A failure by a bidder to submit any bid at all on those two items would clearly constitute non-performance of the conditions of the invitation to bid, not only justifying, but requiring rejection of the bid, since the public agency has no election whether or not to waive defects in a bid which fails to qualify in material particulars. It must reject it, so as to keep all bidders on a plane of equal competition. Hillside Twp. v. Sternin, ubi cit., supra. The unit bids by Stamato in the present case for the two items mentioned were concededly nominal and sham. The situation, therefore, amounts to a substantial failure of compliance with the conditions of the invitation to bid. This is supported by the fact that the specifications here gave the municipality the right to reject any bid "obviously unbalanced." The bids here were unquestionably in that category. It was therefore mandatory, under the principle of the Hillside case, supra, not merely elective, that the bid be rejected.
The mockery of fair competition between bidders which resulted here is apparent. Stamato won the contract as low gross bidder notwithstanding that, on an aggregate bid of $668,774.67, he agreed to provide practically for nothing the timber sheeting left in place and the well-pointing which the next higher aggregate bidder (by only $11,574.83), obviously complying with the specifications in good faith, bid at $83,400 for the first-mentioned item and $26,000 for the second. Since, under the specifications, the requirement that timber sheeting left in place or well-pointing be actually provided by the contractor was completely within the unreviewable discretion of the engineer, a contingency presumably undeterminable by a bidder until the work was *489 in progress, the unsuccessful bidder felt impelled in prudence to submit bona fide estimates on the two items. Stamato, either willing to gamble or possessed of information not available to other bidders, in effect agreed to furnish these items for nothing. It is obvious that if one bidder is to be permitted to submit nominal unit bids on items, which, if actually required, would almost run one-sixth of the total job, there is no pretense of fair and competitive bidding upon a fixed standard. The opportunities for fraud and collusion between a bidder and a municipal engineer if such a practice were sanctioned in a case like this (it is conceded there was no actual fraud here) are manifest.
Nor can the requirement for unit bidding be regarded as unimportant or insubstantial. The unit bid determines the amount to be paid for as much of the item as becomes necessary in the course of the work. And it will not do to say that the municipality cannot be hurt by the nominal character of the bid. The municipality is always concerned with the financial capacity of the contractor to perform. If Stamato were called upon to do the $100,000 (more or less) of sheeting and well-pointing, contrary to his gamble that the work would not be required, a real question as to his capacity to perform the contract might arise. (If not called upon therefor, the city is mulcted, as it is obvious from a comparison of the unit bids that Stamato inflated his bid on other items when he reduced the bids on timber sheeting and well-pointing to nominal amounts.)
The opinion of the court relies upon the decision in Frank Stamato & Co. v. City of New Brunswick, 20 N.J. Super. 340 (App. Div. 1952), in sustaining the nominal unit bids here submitted by the successful bidder. With all deference to the able bench which decided that case, I cannot conclude that it should control this one. In holding that unbalanced bids were not unlawful in the absence of a showing of actual fraud, the court does not consider the factors basic to salutary bidding practice discussed above, but merely relies on Phifer v. Bayonne, 105 N.J.L. 524 (Sup. *490 Ct. 1929), decided by a single Supreme Court justice, and the New York case of Walter v. McClellan, 113 App. Div. 295, 99 N.Y.S. 78, 84 (App. Div. 1906), affirmed without opinion in 190 N.Y. 505, 83 N.E. 1133 (Ct. App. 1907). The Phifer case involved the implication of a nominal unit bid in the setting of an underestimate by the municipal officials of the required quantity of the item bid upon. So did the Walter case, relied upon in Phifer. It is clear that the possibilities of fraud and collusion are far less where the uncertainty in the amount of the work required rests in physical factors not determinable until the work is in progress, but then dependent only upon objectively determinable physical requirements (e.g., amount of excavation required to imbed pipe in river bed, as in Phifer) than where the incidence of the doing of the work depends practically solely upon the unreviewable discretion of an official (as here). In the former situation, as indicated in the Walter case, the skill and knowledge of the contractor in judging the quantities required may arguably be a proper factor to justify his "unbalancing" a bid (although I would not so hold where that would violate the clear purport of the terms of the invitation to bid). In the latter situation, however, the decision to bid only nominally on an item is either a sheer gamble or the result of improper foreknowledge of the official's probable ruling. Neither of these hypotheses is compatible with salutary principles of public bidding.
See Nelson v. Mayor, etc., of City of New York, 131 N.Y. 4, 29 N.E. 814, 815 (Ct. App. 1892), for an interesting discussion of the inherent propensity for fraud in the combination of an official's reserved discretion to vary the amount of goods or services to be rendered under the contract and an unbalanced unit bid. Other cases considering various aspects of unbalanced bidding are In re Anderson, 109 N.Y. 554, 17 N.E. 209 (Ct. App. 1888); Reilly v. Mayor, etc., of City of New York, 111 N.Y. 473, 18 N.E. 623 (Ct. App. 1888); Mayor, etc., of City of *491 New York v. Brady, 115 N.Y. 599, 22 N.E. 237, 239-240 (Ct. App. 1889); and Manhattan Security Corporation v. Delaney, 133 Misc. 671, 233 N.Y.S. 241, 243-244 (Sup. Ct. 1929).
By way of partial distinction of the facts of the Frank Stamato & Co. case, supra, it may be observed that there the city engineer made a comprehensive study of all factors bearing upon the amount of work likely to be required for the items involved in the unbalanced bid there challenged and made all of the data thereby ascertained available to all the contractors desiring to bid on the job (20 N.J. Super., at p. 345).
The admonition by the Supreme Court in Hillside Twp. v. Sternin, supra, relative to the strict enforcement of public bidding requirements so as to minimize opportunities for fraud and public despoilment before they occur, is worth repetition (25 N.J., at pp. 325-6):
"On its face that state of affairs [waiver of security deposit] is inimical to the public interest. The fact that the waiver is attended by good faith on both sides and is not harmful in the particular situation is not sufficient to justify it. If erosion of the policy is to be avoided, even in such a state of affairs, the municipality cannot be permitted to breathe validity into an invalid bid by waiver. In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way * * *. Only by this approach can the desirable protection be afforded to the taxpayers; only in this way can perfect equality be maintained among bidders."