**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1217-20

TOMAR CONSTRUCTION, LLC,

    Plaintiff-Appellant,

v.

PASSAIC VALLEY SEWERAGE
COMMISSION, a body corporate
and politic of the State of New
Jersey, and STONE HILL
CONTRACTING CO., INC.,
a Pennsylvania Corporation,

    Defendants-Respondents.

                   Submitted April 28, 2021 – Decided May 25, 2021

                   Before Judges Whipple and Rose.

                   On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0599-20.

                   DeNoia, Tambasco & Germann, LLC, attorneys for appellant (Thomas DeNoia and Tomaso R. DeNoia, on the briefs).

                   Piro Zinna Cifelli Paris & Genitempo, LLC, attorneys for respondent Passaic Valley Sewerage Commission

(David M. Paris and Michael A. Koribanick, on the brief).

Fenningham, Dempster & Coval, LLC, attorneys for respondent Stone Hill Contracting Co., Inc. (Gerald A. Hughes and Timothy B. Fenningham, on the brief).

PER CURIAM

Plaintiff Tomar Construction, LLC appeals from a January 5, 2021 Law Division order, dismissing its verified complaint in lieu of prerogative writs that sought an award of a public contract as the lowest responsive and responsible bidder. Defendant Passaic Valley Sewerage Commission (PVSC) awarded the contract for its Decant Facility Rehabilitation Project to the next lowest bidder, defendant Stone Hill Contracting Co., Inc. We affirm.

The four-year project includes the structural repair of PVSC's decades-old sludge decant tanks, replacement of certain components, and upgrades to electrical and utility rooms involved in the sludge treatment process. In October 2019, PVSC solicited bids for the project. The bid proposal required "a combination of lump sum costs, unit prices and allowance items." Lump sum amounts were required for individual line items.

Pertinent to this appeal, section 1.17 of the bid specification provided, in pertinent part:

A. Pursuant to law, [PVSC] may reject bids when it has sound, documented business reasons which are in the best interest of [PVSC]. [PVSC] reserves the right to . . . disregard all nonconforming, nonresponsive, unbalanced or conditional [b]ids.

B. In evaluating [b]ids, [PVSC] will consider the qualifications of the [b]idders, whether or not the [b]ids comply with the prescribed requirements, and such alternates, prices and other data, as may be requested in the [b]id [f]orm prior to the [n]otice of [a]ward.

C. If the [c]ontract is to be awarded, it will be awarded to the lowest responsible [b]idder in accordance with applicable law.

Bidders were further advised: "Determination of low bid will be made by comparing the total estimated bid price, which shall include the lump sum bid price and allowances."

On December 20, 2019, four bids were submitted for the project, as follows:

| | BIDDER | TOTAL BID AMOUNT | BID ITEM 1C | BID ITEM 1D | BID ITEM 1E | BID ITEM 1H |
|---|---|---|---|---|---|---|
| 1. | Tomar | $51,879,500 | $1,200,000 | $2,500,000 | $1,150,000 | $20,000 |
| 2. | Stone Hill | $53,671,263 | $1,944,900 | $5,642,400 | $1,909,900 | $330,200 |
| 3. | Railroad Constr., Inc. | $55,754,675 | $3,500,000 | $4,000,000 | $1,500,000 | $200,000 |
| 4. | North East Remsco Constr., Inc. | $68,248,000 | $4,000,000 | $5,213,580 | $2,300,000 | $360,000 |

Although plaintiff submitted the lowest bid, PVSC rejected its proposal, finding plaintiff violated a material bid specification by submitting "an unbalanced non-responsive bid." In reaching its decision, PVSC utilized four sources to review the bids: Chief Operating Officer Bridget McKenna; Chief Engineer John Rotolo; and the Operations Department (collectively, internal PVSC sources); and PVSC's consulting engineers, Hazen and Sawyer. PVSC's internal sources each identified issues with plaintiff's bid for several lump sum items, concluding the bid was unbalanced and non-responsive. Hazen and Sawyer also determined plaintiff's bid was

> unbalanced based upon the apparent front-loading of [b]id [i]tem 1F (Substation 16) which represents work to be completed in the initial stages of the project. Additionally, nominal pricing for [b]id [i]tems 1C, 1D, and 1E, and 1H as well as enhanced pricing for many of the unit pricing of [b]id [i]tems 14A-J also indicates an unbalanced bid.

In January 2020, plaintiff filed an order to show cause and verified complaint seeking preliminary injunctive relief. Defendants agreed to temporarily restrain the contract award while the parties conducted extensive discovery and fully briefed the bid challenge.

On August 17, 2020, Judge Keith E. Lynott issued a comprehensive oral decision – spanning sixty transcript pages – articulating in great detail the

relevant case law and principles pertaining to unbalanced bids. See, e.g., M.J. Paquet, Inc. v. N.J. Dep't of Transp. (Paquet II), 171 N.J. 378, 399 (2002); Riverland Constr. Co. v. Lombardo Contracting Co., Inc., 154 N.J. Super. 42, 45-48 (App. Div. 1977), aff'd o.b., 76 N.J. 522 (1978); Armaniaco v. Borough of Cresskill, 62 N.J. Super. 476, 482 (1960).

For example, the judge recognized "unbalanced bids are not per se illegal or inappropriate, but can be employed in ways that are conducive to fraud or collusion that can expose the bidding agency to demands or change orders seeking additional funding after accepting the bid and entering a contract . . . ." In that regard, the judge recognized the inherent risk of unbalanced bids on public funds. See Armaniaco, 62 N.J. Super. at 486-87 (holding a governmental entity's ability to reject unbalanced bids prevents the risks to public funds).

Observing New Jersey "case law does not delineate any bright line test . . . [for] the determination of an unbalanced bid[,]" the judge noted front-loaded and nominal bids "are perhaps the most frequent type[s] of unbalanced bids." But the judge also recognized unbalanced bids can include those "types of bids or bidding strategies that . . . involve disproportionately high or low bids on individual items or components." Rejecting plaintiff's argument to the contrary, the judge found "a nominal bid need not only be a penny bid . . . but . . . can be

any bid that is so low that it does not bear its appropriate share of the costs or profit."

Finding plaintiff failed to "establish[] a reasonable probability of success on the merits[,]" the judge nonetheless concluded a prompt plenary hearing was appropriate here, where the "issue of what constitutes an unbalanced bid" was best resolved by live expert testimony, rather than the competing expert reports presented by the parties. The judge continued restraints pending the outcome of the hearing.

Between September and November 2020, Judge Lynott conducted a seventeen-day bench trial. Plaintiff presented the testimony of five witnesses, including its president, Thomas Mottackal; chief estimator, Sobhan Nallamothu; and expert in general engineering and bid review, George Moglia. Plaintiff also compelled the testimony of McKenna, who is retired from PVSC, and Hazen and Sawyer's project manager, Julian Chianelli. Plaintiff also submitted in evidence deposition excerpts of various witnesses who testified at trial and PVSC's purchasing agent, Thomas Fuscaldo. Rotolo testified on behalf of PVSC. Glenn Brunje was qualified – over plaintiff's objection – as PVSC's expert in engineering, bid package preparation, bid submittal review and

construction project oversight. Numerous documents were jointly admitted in evidence. Stone Hill did not present the testimony of any witnesses.

Following closing arguments on November 18, 2020, Judge Lynott reserved decision. On January 4, 2021, the judge issued a cogent decision from the bench that spanned more than fifty transcript pages. Incorporating the legal principles pertaining to unbalanced bids set forth in his earlier decisions,[1] the judge meticulously detailed his findings of fact and conclusions of law.

As to the meaning of unbalanced bids, the judge found it "noteworthy that the experts of the respective sides examined the same data and applied what the court [found] was essentially the same definition of an unbalanced bid from an industry standard and consistent with applicable New Jersey case law and came to anecdotal conclusions." Explaining his finding that plaintiff's bid was unbalanced, the judge stated, in pertinent part:

> [Plaintiff's] lump sum line item bid . . . for items 1C, 1B, 1E and 1H were substantially lower than the average of the bids of the other bidders. . . . [T]he comparison of this nature to the bid of the other bidders is completely appropriate in determining if the bid was unbalanced using industry standards employed by staff, the Hazen and Sawyer firm and the litigation experts in this case.

---

[1] In addition to his August 17, 2020 decision, the judge issued a detailed oral decision, denying PVSC's motion for a directed verdict at the close of plaintiff's case on October 19, 2020.

Recognizing plaintiff's total bid was "1.7 million dollars less than the next lowest bid of Stone Hill," the judge nonetheless credited the testimony of PVSC's staff, which "had serious concerns . . . that acceptance of [plaintiff's] bid would put the agency in a position of having to pay[] substantially more than the bid by Stone Hill." The judge elaborated:

> There w[ere] reasons in the record before [PVSC] to find that [plaintiff's] bid was not merely different, but was materially found unbalanced, meaning the level of unbalancing . . . presented a risk to [PVSC] of increased costs, delay and interruption of operations, [and] reflected a lack of understanding of the bid specifications by [plaintiff] and the critical sequencing of the project and that impaired the competitive bidding process.

As one notable example, the judge cited plaintiff's $20,000 bid for item 1H. That item included not only "the trailers themselves, but office, conference, furnishings, computers and communication equipment all for a four-year project, together with mobilization costs." According to the judge:

> It was and is appropriate to find that this line item bid was seriously deficient and indeed nominal. Even tho[ugh] the item itself represents only a relatively small portion of the overall contract amount as [plaintiff] has pointed out . . . the nominal amount [plaintiff] submitted on its face reflected to the PVSC analyst lack of understanding [of] what was needed to perform this critical contract and attributed to a problem of compromising the ability to compare

8

[plaintiff's] bid with that of other bidders to determine the actual low bidder, thereby undermining the competitive process contemplated by the public bidding laws.

The judge also cited bid items 1B and 1E, finding they were

substantially low because [plaintiff] did not include the bid item amounts for HVAC-related equipment. Instead [plaintiff] placed all or virtually all of the costs for such equipment in item 1G. . . . Given the content of [the bid specifications, drawings, and equipment lists] read together, it was entirely reasonable for PVSC to expect the bidders to include costs for HVAC-related items in items 1B and 1E. And it was therefore not an arbitrary, capricious act to find that [plaintiff]'s significantly lower bids for these items apparently lacking such cost[s] were unbalanced.

Judge Lynott referenced other issues with plaintiff's bid, including Hazen and Sawyer's determination that item 1F was "front-loaded." While the judge recognized McKenna did not reach the same conclusion, the judge found "[o]n the record before Hazen and Sawyer at the time, this was certainly not an unreasonable or arbitrary conclusion." Rather, the "analysists came [to] separate, but ultimately like-minded conclusions about [plaintiff]'s bid." The judge found credible the testimony of all witnesses on staff or otherwise associated with PVSC.

Conversely, Judge Lynott found plaintiff's process and approach in preparing the bid was flawed and demonstrated its lack of understanding of the

9

requirements. Citing the testimony of Mottackal and Nallamothu, the judge concluded "their essential focus was on the bottom-line bid amount." Importantly, the judge found Nallamothu "was not familiar in any meaningful way with the concept of an unbalanced bid."

Turning to the experts, Judge Lynott found Brunje's testimony "credible, straightforward, and generally consistent." According to the judge, Brunje "employed an industry-based standard for an unbalanced bid" that "was not meaningfully different from that used by [plaintiff]'s expert, . . . Moglia." Having previously rejected plaintiff's in limine challenges to Brunje's qualifications and his opinion as "net," the judge determined Brunje's "findings as to unbalancing [we]re supported by the record."

As for Moglia's testimony, the judge found the expert "used a virtually identical standard of review" as Brunje, "but came to different, ultimate conclusions, positing that [plaintiff's] bid was merely different and not unbalanced." Importantly, however, the judge found Moglia acknowledged plaintiff's bids for "items 1C, 1B, and 1E were extremely low" and substantially lower than the other bidders. Further, Moglia testified "it was necessary to look behind [plaintiff's] bid and the facts [that were] not available to PVSC . . . at the time it made its decision." The judge found that need rendered Moglia's opinion

"less credible, less persuasive and less meaningful or helpful to [him as] the factfinder in the circumstances of this case."

The judge concluded:

> The battle of experts in this case serves . . . to highlight the discretionary nature of [the definition of] a balanced bid. . . . Brunje's opinion on the subject was credible, grounded in an appropriate industry-based standard and method and the facts, the facts on the record and fully supports as reasonable and non-arbitrary that PVSC exercised good discretion to determine [plaintiff's] bid was unbalanced.
>
> To adopt . . . Moglia['s] opinion and circumstances here would be very much like substituting the court's judgment for that of . . . PVSC.

In reaching his decision, the judge rejected plaintiff's contention that its "bid was not unbalanced . . . but merely different" and that had PVSC inquired, plaintiff could have explained that difference. As the judge aptly recognized, the burden did not fall upon PVSC "to inquire post bid how [plaintiff] interpreted the specifications . . . ."

Ultimately, Judge Lynott concluded plaintiff failed to prove PVSC's rejection of its bid "was arbitrary, capricious, unreasonable or contrary to law." Instead, the judge found PVSC's conclusion that plaintiff's bid was unbalanced "fully consistent with the New Jersey case law defining an unbalanced bid,

11

describing the dangers associated with an unbalanced bid and authorizing . . . [the] disqualifi[cation of] such a bid." The judge was particularly persuaded PVSC's rejection of plaintiff's bid as unbalanced was warranted to "prevent[] a practical possibility of the risk of delay and costs in the future," which could prove "catastrophic." Based upon the well-developed record, the judge concluded plaintiff failed to prove PVSC's rejection of its bid was "arbitrary, capricious, unreasonable or contrary to law."

On January 5, 2020, Judge Lynott entered a memorializing order, dismissing plaintiff's complaint with prejudice. Plaintiff's ensuing applications for emergent relief were denied by this court and the Supreme Court, although we agreed to accelerate its appeal.

On appeal, plaintiff primarily argues: (1) the definition of an "unbalanced bid" in the PVSC's specifications was "ambiguous"; (2) PVSC inappropriately rejected its bid for prior negative experience; and (3) the trial judge erroneously admitted the testimony of PVSC's expert witness. Defendants urge us to dismiss the appeal on procedural grounds or otherwise affirm the judge's order.

We have carefully considered plaintiff's contentions in view of the applicable law, and conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the

12

reasons stated by Judge Lynott in his thoughtful and well-reasoned decision. We add only the following comments as to plaintiff's points III and IV, which assert PVSC's specifications were "ambiguous" regarding the definition of an unbalanced bid, and that its bid was not unbalanced as "a matter of law."

We review de novo the trial court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Similar to the trial court, we must determine whether PVSC's rejection of Tomar's bid as non-responsive and unbalanced was arbitrary, capricious, or unreasonable. See In Re Protest of the Award of the On-Line Games Prod. & Operation Servs. Cont., 279 N.J. Super. 566, 590 (App. Div. 1995) ("The standard of review on the matter of whether a bid on a local public contract conforms to specifications . . . is whether the decision was arbitrary, unreasonable or capricious.").

We are also guided by well-established principles governing public bidding disputes. A public contract shall be awarded to the lowest responsible bidder, N.J.S.A. 40A:11-4(a), where "[l]owest responsible bidder" means "the bidder or vendor: (a) whose response to a request for bids offers the lowest price and is responsive; and (b) who is responsible." N.J.S.A. 40A:11-2(27). "'Responsive' means conforming in all material respects to the terms and

conditions, specifications, legal requirements, and other provisions of the request." N.J.S.A. 40A:11-2(33). Plaintiff's responsiveness is at issue here.

To be responsive, bids must not materially deviate from the specifications and requirements set forth by the local contracting unit. Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 314 (1994). "[A]ny material departure invalidates a nonconforming bid as well as any contract based upon it." Ibid. (citing Twp. of Hillside v. Sternin, 25 N.J. 317, 323 (1957)).

As a preliminary matter, we reject defendants' contentions that plaintiff's appeal should be dismissed as moot because "significant action" on the project has been undertaken since the trial judge lifted the stay. See Statewide Hi-Way Safety, Inc. v. N.J. Dep't of Transp., 283 N.J. Super. 223, 225-26 (App. Div. 1995) (dismissing as moot an appeal challenging the award of a highway construction contract, where the project was "substantially completed"). To support their position, defendants have provided on appeal certifications concerning the status of the project following the judge's final decision. Notably, defendants did not move to dismiss the appeal as moot before us. See R. 2:8-2.

We nonetheless observe that while action has been taken in preparation for the project, actual construction had not yet occurred when defendants'

responding briefs were filed. As such, there is no evidence before this court that the contract has been "substantially completed." And arguably, the matter is of public importance and capable of repetition. See Advance Elec. Co. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 166 (App. Div. 2002). We therefore decline to dismiss the appeal as moot.

Nor are we persuaded that plaintiff lacked standing to file its appeal. Although raised in the Law Division, the trial judge did not specifically address the issue, implicitly ruling instead to conduct an extensive plenary hearing and decide the matter on the merits. Defendants did not cross-appeal from any aspect of the judge's decision. Nor did they move to dismiss plaintiff's appeal for lack of standing before this court. See R. 2:8-2.

We have nonetheless considered defendants' contentions and decline to dismiss the appeal on standing grounds. Although plaintiff's bid was deemed unresponsive, that flaw did not defeat standing. See Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 644 (2009) (recognizing an unsuccessful bidder has standing to challenge a public contract award); see also In re N.J. State Cont. A71188, 422 N.J. Super. 275, 289 (App. Div. 2011).

We next turn to plaintiff's overlapping contentions that the specifications were ambiguous because the term "unbalanced bid" was not defined therein, and

15

plaintiff's bid was "not unbalanced under any definition under New Jersey case law or otherwise." During summation, however, plaintiff argued its bid was not unbalanced – not whether the specifications were ambiguous for failure to define the term, "unbalanced bid." At the conclusion of the judge's decision – in response to plaintiff's inquiry – the judge acknowledged "the absence of a definition of unbalanced bid" in the specifications. But the judge further noted his ruling "incorporated" PVSC's decision, which "utilized an appropriate standard and process for making that determination."

Indeed, the focus of the protracted trial was the methodology employed by PVSC's sources in evaluating the bids for the project and the competing experts' opinions as to whether plaintiff's bid was unbalanced under the circumstances presented. The procedural history of this matter demonstrates the judge's indulgence of plaintiff's claims, affording full pre-trial discovery and a multiple-day trial. The judge's opinion aptly addressed the issues presented in view of the legal principles that define unbalanced bids.

We need not repeat those principles here. We simply note, as did the trial judge, New Jersey case law has long recognized various "mode[s] of unbalanced bidding." See, e.g., Boenning v. Brick Twp. Mun. Utils. Auth., 150 N.J. Super. 32, 37 (App. Div. 1977). And PVSC's bid specifications expressly reserved the

16

right to reject unbalanced bids. See Armaniaco, 62 N.J. Super. at 487 (stating that a public entity could reserve the right to reject unbalanced bids to guard against the "catastroph[e]" of greater than anticipated quantities of a high unit-priced item).

Moreover, based on our de novo review of the record, we discern no basis to disturb Judge Lynott's decision that, plaintiff's bid was unbalanced. In summary, the judge credited Hazen and Sawyer's determination that bid item 1F for substation 16 constituted the "front-loading" mode of unbalanced bidding. In reaching his decision, the judge reasonably observed plaintiff's bid for this item was "substantially higher than the bids of the other bidders and the engineering estimate." And "[t]he substation was to be constructed in the first phase of the project."

Further, plaintiff's bid contained multiple nominal bid items, thereby evidencing another mode of unbalanced bidding. In fact, unlike in Riverland where only one category pertaining to a relatively minor item involved a nominal bid, 154 N.J. Super. at 45-46, and in Armaniaco where nominal bids were submitted only for two unit prices, 62 N.J. Super. at 479-80, nominal bids here were submitted for ten out of the eighteen bid items. We defer to the judge's credibility findings, which cited substantial evidence in the record to support the

17

testimony of McKenna and Chianelli that plaintiff's bid contained nominal bid items. We discern no basis to disturb the judge's conclusion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1217-20