20 N.J. Super. 340 (1952)
90 A.2d 34
FRANK STAMATO & CO., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
CITY OF NEW BRUNSWICK, A MUNICIPAL CORPORATION, BOARD OF COMMISSIONERS OF THE CITY OF NEW BRUNSWICK, DEFENDANTS-RESPONDENTS, AND A. CESTONE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1952.
Decided July 7, 1952.
*341 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Peter P. Walsh, Jr., argued the cause for defendant-appellant (Messrs. Jamieson and Walsh, attorneys).
Mr. John T. Keefe argued the cause for plaintiff-respondent.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
The defendant City of New Brunswick advertised for bids for the construction of a 30-inch pipe line, approximately 14,000 feet in length, including pipe, excavation and other miscellaneous items. The defendant A. Cestone Company made its bid, in the total sum of $526,358.50, to furnish all materials and to perform all the required work according to the specifications. This was the lowest bid of the six bids made on the entire contract, as *342 awarded. The plaintiff, Frank Stamato & Co., submitted a bid in the total sum of $526,590, which was next to the lowest bid. On February 5, 1952, defendant City of New Brunswick passed a resolution accepting the bid of defendant A. Cestone Company.
Frank Stamato & Co. then brought suit in the Superior Court, Law Division, in which it sought a judgment setting aside the resolution of the City of New Brunswick awarding the contract to A. Cestone Company, and requiring the City of New Brunswick to award the contract to plaintiff. Defendants answered and both sides made motions for summary judgment on the pleadings and affidavits. The trial court entered summary judgment setting aside the resolution of February 5, 1952, and the defendant A. Cestone Company appeals.
The complaint alleged that A. Cestone Company had made an "unbalanced bid" on Items 7 and 8 of the specifications and demanded that the award of the contract to A. Cestone Company should be set aside because (1) Cestone's unbalanced bid violated the specifications which prohibited an obviously unbalanced bid, and (2) the city's failure to reject Cestone's unbalanced bid and its action in awarding the contract to Cestone "constituted unfair competition, partiality, privilege, and discrimination and plaintiff was not put on an equal footing or basis to compete with said defendants to bid said work according to said specifications."
The pertinent parts of the specifications provide:

"0.11  Basis for Comparing Bids

All bids will be compared on the basis of the Engineer's estimate of the quantities of work to be done. The estimated quantities shown in the proposal forms are not to be considered by the Contractor as actual quantities which may be required to complete the work, but solely to serve as a basis for comparing bids.
Bids which are obviously unbalanced, may be rejected."

"0.22  Borings

* * * * * * * *
In considering the results of the subsurface investigation thus presented, it shall be understood by the Contractor that the record, *343 as shown, represents the judgment of the observer as to the character of materials and subsurface conditions, and that the City, or its Engineer, do not guarantee that the character of the underground material will even approximately be as reported by the driller."

"Article VI  Variations Between Proposal and Actual Quantities

The quantities of the various items of work to be done and materials to be furnished under this contract, which have been estimated as shown in the Schedule of Contract, Items attached hereto, are approximate only and for the purpose of comparing, on a uniform basis, the bids offered for the work under this contract; and the Owner is not to be held responsible that any of the estimated quantities shall be found even approximately correct in the construction of the work; and the Contractor shall make no claim for anticipated profits, or for loss of profit, because of a difference between the estimated quantities of the various items of work stated in the proposal, and the quantities actually performed, or materials actually delivered."
"Item 7  Additional Price for Rock Excavation
 5000 Cu. Yds. @ $ ____ per Cu. Yd. $ ____
 _________________________________________
 (Write Unit Price)
 Item 8  For Timber Sheeting Left in Place
 50 M Ft. B.M. @ $ ____ per M Ft. B.M. $ ____
 ____________________________________________
 (Write Unit Price)"

"7.00  Work Included and Payment

Where material excavated under Items 1, 5 or 6 is rock, an additional or excess price per cubic yard will be paid under Item 7.

7.01  Definition of Rock Excavation (Item 7)
Rock excavation shall comprise such ledge rock as in the opinion of the Engineer requires blasting, and boulders of one-half cubic yard or more in volume.
All other materials, however hard, stiff, and compact, including soft and disintegrated rock, which can be removed without the aid of explosives, shall be classed and paid for as earth.

8.00  Item 8  For Timber Sheeting Kept in Place

When, in the opinion of the Engineer, timber sheeting and bracing, furnished and placed under Items 1, 5 or 6 should be left in place to avoid undermining, or otherwise endangering the work or adjacent structures, payment will be made under this Item for such timber sheeting and bracing as is ordered left in place, at the price bid per thousand board measure under this Item."
*344 The bids submitted on Items 7 and 8 were as follows:

 Item 7  Rock Excavation
 Unit Price Bid on Estimated
 Per Cu. Yd. 5000 Cu. Yds.
 A. Cestone Company .................... $.01 $50.00
 Frank Stamato & Co. ................... 5.00 2,500.00
 Bidder M .............................. 3.00 15,000.00
 Bidder A .............................. 20.00 100,000.00
 Bidder L .............................. 1.00 5,000.00
 Bidder V .............................. 10.00 50,000.00
 Item 8  Timber Sheeting Left in Place
 Unit Price Bid on Estimated
 Per M ft. B.M. 50 M Ft. B.M.
 A. Cestone Company ................... .01 .50
 Frank Stamato & Co. .................. 20.00 10,000.00
 Bidder M ............................. .01 .50
 Bidder A ............................. 3.50 17,500.00
 Bidder L ............................. 50.00 25,000.00
 Bidder V ............................. .01 .50

An unbalanced bid comprehends a bid based on nominal prices for some work and enhanced prices for other work. The mere fact that a bidder has submitted an unbalanced bid, does not automatically operate to invalidate an award of the contract to such bidder. There must be proof of collusion or of fraudulent conduct on the part of such bidder and the city or its engineer or other agent, or proof of other irregularity of such substantial nature as will operate to affect fair and competitive bidding. Phifer v. Bayonne, 105 N.J.L. 524 (Sup. Ct. 1929); Walter v. McClellan, 113 App. Div. 295, 99 N.Y.S. 78 (App. Div. 1906), affirmed 190 N.Y. 505, 83 N.E. 1133 (Ct. App. 1907). In the absence of fraud, corruption or abuse of discretion, the determination of the proper officers in making an award of a contract will not be disturbed by the court. Fisher v. Longport, 136 N.J.L. 217 (Sup. Ct. 1947); 10 McQuillin, Municipal Corporations (3rd ed. 1950), § 29.83.
The only provision in the specifications concerning unbalanced bids is: "Bids which are obviously unbalanced may be rejected." This is not a prohibition against unbalanced bids.
*345 Since the quantities of rock excavation and timber sheeting were not such as could be definitely ascertained before the awarding of the contract, the city had its engineer make an estimate of the amount thereof, and required all bidders to bid on such estimated quantities in order that the lowest bidder on the whole contract could be ascertained. Prior to the preparation of the plans and specifications, the city had borings made along the entire pipeline right of way. The city's engineer, a hydraulic and sanitary engineer of 30 years' experience, made the estimate of 5,000 cubic yards of rock excavation under Item 7 and of 50 M Ft. B.M. of sheeting under Item 8, based on his study of these borings, cores, logs of the borings, and conferences with various people familiar with the terrain and who had previously done work in this same area. The results of these borings were made available to all contractors to aid them in the preparation of their bids. The specifications put all bidders on notice that before submitting bids they should "examine the site of the work and make all necessary investigations in order thoroughly to inform themselves as to the character and magnitude of all work involved in the complete execution of the contract" and that the estimated quantities were "solely to serve as a basis for comparing bids."
Here, there was no showing of any fraud, corruption or abuse of discretion, nor a showing of any substantial irregularity which affected fair and competitive bidding. The prospective bidders could not be misled by the specifications. Fair and competitive bidding was not hindered or restricted in any way. Consequently, neither the validity of Cestone's bid nor the award of the contract to Cestone can be successfully challenged. Phifer v. Bayonne, above; Walter v. McClellan, above.
Judgment reversed