THE TOWNSHIP OF HILLSIDE, IN THE COUNTY OF UNION,
A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v. SHEPHARD STERNIN, TRADING AS SHEP ELEC-
TRICAL SERVICE, DEFENDANT-RESPONDENT.

Argued October 21, 1957—Decided November 25, 1957.

*Mr. Arthur E. Dienst* argued the cause for plaintiff-appellant.

*Mr. Leo Yanoff* argued the cause for defendant-respondent (*Messrs. Green & Yanoff,* attorneys).

The opinion of the court was delivered by

FRANCIS, J. The Township of Hillside sued to recover a monetary loss suffered by it as a result of the defendant Sternin's refusal to enter into a contract for the doing of some public work which had been awarded to him pursuant to a bid which he had tendered. The trial court granted summary judgment against the township, from which this appeal was taken. We certified on our own motion.

Early in April 1956 the governing body of Hillside decided to install two sirens, one at the Abram P. Morris School and the other at the Hillside Avenue School. The cost involved was such as to make the project subject to *N. J. S. A.* 40:50–1, which then provided as follows:

"No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor * * * where the sum to be expended exceeds the sum of one thousand dollars [increased to $2,500, *L.* 1957, *c.* 30] unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder." (Insertion ours.)

In compliance with the statute, a public notice soliciting sealed bids was inserted in certain newspapers. It was entitled "Notice to Contractors," and recited among other

things that the specifications and forms of bid would be furnished by the township clerk at his office at 1284 North Broad Street, Hillside, New Jersey, or were available for inspection there during business hours. This further condition was specifically imposed on prospective bidders:

"A certified check made payable to the Township of Hillside for not less than 10% of the amount bid must accompany each proposal."

The record discloses that in October 1955 similar installations had been contemplated, one of them for the Saybrook School and the other for the Hillside Avenue School. At that time Sternin, an electrical contractor, had been given a copy of the specifications and had submitted bids or estimates for the work. It does not appear whether there was then any public advertising for proposals. In any event, the plan was abandoned until April 1956, when it was reactivated with the Abram P. Morris School being substituted for the Saybrook School as the site of one of the sirens.

There is no proof that Sternin ever saw the April 1956 advertisement for bids. His affidavit is to the contrary. It is undisputed that the project was called to his attention by the secretary of the civilian defense organization of the township, who asked him to submit a bid. There is no suggestion that she informed him of the necessity of submitting a 10% deposit check. His sworn statement is to the effect that under the assumption that the proposed undertaking was to be the same as that of 1955, he instructed his secretary to copy and resubmit his two earlier bids without first examining the new specifications. On the other hand, the secretary of the defense organization deposed that after she had made a telephone call to his employee to request a bid, Sternin came to her office. She said further that she told him of the availability of the specifications at the clerk's office (in a different building) and suggested that he go there, obtain a copy and submit a bid. After receiving this information, he departed.

On April 16 the township clerk received sealed bids from him, one for each siren to be installed. The total was $1,087.25. No certified check for the 10% deposit was enclosed or ever delivered. It may be noted here that this requirement did not appear in the specifications, although they do contain a reference to forfeiture of the "certified check which accompanied the proposal" if the successful bidder fails to enter into the contract. Sternin's figure was $1,544.75 lower than that of his nearest competitor and the contract was awarded to him. However, he refused to execute the written agreement, maintaining (some time later) that the bid was the result of his mistaken belief that the work to be done was the same as that which had been called for in 1955 and that he had never seen the new and more demanding specifications relating to the erection of these particular sirens. He contended also that his bid was invalid because the deposit check did not accompany it.

In September, after some conferences with Sternin, who remained adamant in his refusal to sign the contract, an award was made to the next lowest bidder. The sequel was this suit to recover the difference which had to be paid to the second contractor.

Without setting forth all of the data, the attendant circumstances, and the inferences that may be drawn, we are of the opinion that a factual issue was presented in the Law Division as to whether the specifications were examined by the defendant and as to whether he intended to make his proposal on the basis of them. The trial court held that no such issue existed and predicated the summary judgment for the defendant in part on such finding. However, because of our concurrence with his view on the aspect of the controversy concerning the deposit check, a reversal is not warranted.

In the memorandum declaring that summary judgment would be granted, one of the reasons assigned was the failure of the defendant to furnish the security deposit with his bids. Study of the record has led us to assign that issue as the critical one for determination.

For many years our statutory law has required contracts for the performance of public work involving the expenditure of money in excess of $1,000 to be let upon competitive bidding solicited through public advertisement. It is an almost universally recognized practice, *McQuillin, Municipal Corporations,* § 29.28 (1950), and one which is rooted deep in sound principles of public policy. *Waszen v. City of Atlantic City,* 1 *N. J.* 272, 283 (1949); *Tice v. Long Branch,* 98 *N. J. L.* 214 (*E. & A.* 1922). The purpose is to secure competition and to guard against favoritism, improvidence, extravagence and corruption. Statutes directed toward these ends are for the benefit of the taxpayers and not the bidders; they should be construed with sole reference to the public good; and they should be rigidly adhered to by the courts. *Weinacht v. Board of Chosen Freeholders of County of Bergen,* 3 *N. J.* 330, 333 (1949); *Tice v. Long Branch, supra; McQuillin, supra,* § 29.29.

Our statute set forth above requires public advertisement for bids and award of the contract to the lowest responsible bidder. Of course, the advertisement could contain the specifications and all of the conditions upon which proposals are sought. However, there can be no doubt about the propriety of depositing the specifications at some convenient place where they are available to all interested parties, so long as adequate reference is made thereto in the public notice. Nor can there be any question as to the validity of the inclusion in the advertisement of additional conditions of bidding, such as a requirement for the deposit of specified security with the bid. Such factors in conjunction with the specifications establish and measure the obligation of persons who seek the contract.

The conditions and specifications must apply equally to all prospective bidders. Otherwise, there is no common standard of competition. Every element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or to disregard and thus to estimate his bid on a basis different from that afforded the other con-

tenders. *Tice v. Long Branch, supra; Armitage v. Newark,* 86 *N. J. L.* 5 (*Sup. Ct.* 1914) ; *Case v. Trenton,* 76 *N. J. L.* 696 (*E. & A.* 1909). So it follows that all bids must comply with the terms imposed, and any material departure therefrom invalidates a nonconforming bid as well as any contract based upon it. If this were not the rule, the mandate for equality among bidders would be illusory and the advantages of competition would be lost. *Albanese v. Machetto,* 7 *N. J. Super.* 188, 191 (*App. Div.* 1950) ; *Armitage v. Newark, supra; Hornung v. West New York,* 82 *N. J. L.* 266, 269 (*Sup. Ct.* 1911) ; *Case v. Trenton, supra,* 76 *N. J. L.* at *pages* 699–700.

██ The financial capacity of a bidder is a material and substantial consideration in connection with the award of contracts for public work. Manifestly it is one element which must enter into the determination of responsibility; the statute itself speaks of the lowest "responsible" bidder. *Waszen v. City of Atlantic City, supra,* 1 *N. J.* at *page* 283; *Sellitto v. Cedar Grove Township,* 133 *N. J. L.* 41, 43 (*Sup. Ct.* 1945). In this connection obviously the Legislature regarded that factor as important because it adopted a separate act to provide municipalities with a means of requiring a prospective bidder to furnish in advance a statement of his financial ability. *N. J. S. A.* 40:50–5; *William A. Carey & Co. v. Borough of Fair Lawn,* 37 *N. J. Super.* 159, 166 (*App. Div.* 1955). And in our judgment a demand in a public advertisement for the deposit of some form of security as a guaranty that the contract will be entered into if the bid is accepted, is properly imposed as an aid to the governing body in reaching its decision. Moreover, the deposit is material for another reason. It is recognized that failure of the successful bidder to execute the contract results in its forfeiture, 63 *C. J. S. Municipal Corporations* § 1152(*b*), *p.* 828, and the specifications so provided in this case. Thus, in most instances the municipality may be made whole for any resulting loss or expense by summary action without having to sue for damages.

Consequently, there would appear to be no rational support for an argument that the demand in the advertisement for a certified check of the percentage stated was not a prerequisite to be complied with by all of the bidders. In fact, the brief of the township does not seriously argue to the contrary. However, the claim is that the condition may be waived by the municipality as between itself and the recalcitrant bidder. Both parties concede, at least by plain implication, that the award of the contract to Sternin could have been successfully attacked by a taxpayer or another bidder (at least before execution of the instrument and the posting of a proper performance bond). But the township contends that a bidder should not be permitted to take advantage of his own default and that the right of waiver in the governing body ought to be sanctioned. The suggestion is persuasive on first consideration but loses its force when confronted with the strong public policy involved.

The law is clear that bids must meet the terms of the notice. The significance of the expression "lowest bidder" is not restricted to the amount of the bid; it means also that the bid conforms with the specifications. *William A. Carey & Co. v. Borough of Fair Lawn, supra,* 37 *N. J. Super.* at *page* 165; *Tufano v. Cliffside Park,* 110 *N. J. L.* 370 (*Sup. Ct.* 1933); *Armitage v. Newark, supra; Case v. Trenton, supra.* Minor or inconsequential variances and technical omissions may be the subject of waiver. *Matazzo v. Board of Com'rs, Camden,* 8 *N. J. Misc.* 787 (*Sup. Ct.* 1930); *Hornung v. West New York, supra; Faist v. City of Hoboken,* 72 *N. J. L.* 361 (*Sup. Ct.* 1905); *McQuillin, supra,* § 29.78. But any material departure stands in the way of a valid contract, and the defaulting person cannot be classed as a bidder at all. *Sanitary Dist. of Chicago v. McMahon & Montgomery Co.,* 110 *Ill. App.* 510 (*App. Ct.* 1903). This is because the requirements are generally considered to be mandatory or jurisdictional. *City of Hartford v. King,* 249 *S. W. 2d* 13 (*Ky. Ct. App.,* 1952); *McQuillin, supra,* § 29.30. Substantial noncompliance cannot be waived by the municipality. *Albanese v. Machetto, supra; Tufano*

*v. Cliffside Park, supra; Case v. Trenton, supra.* The reason for this bar is obvious. When the waiver occurs, the bidders no longer stand on a basis of equality and the advantages of competition are lost. As the Supreme Court said in *Tufano v. Cliffside Park, supra:*

"The municipal authorities should not be permitted to waive any substantial variance between the conditions under which bids are invited and the proposals submitted. If one bidder is relieved from conforming to the conditions which impose some duty upon him, or lay the ground for holding him to a strict performance of his contract, that bidder is not contracting in fair competition with those bidders who propose to be bound by all the conditions." (110 *N. J. L.*, at *page* 373)

██ Attention has been called to the fact that all of the cases in New Jersey involve attacks upon the nonconforming bid by a competitor or a taxpayer. And it is suggested that where the good faith of the governing body with respect to the waiver cannot be questioned, and where neither competing bidder nor taxpayer is involved, the delinquent person should be held to his bid. No cases directly in point either here or elsewhere in the country have been cited to us. Our own research has not proved more productive.

It must be conceded that the amount of the deposit involved in the present case is not large and that the dispute is only between Sternin and the township. But the statute evinces a clear intention to provide maximum protection for the taxpayer. So the principle at stake looms large in the regulation of practices pertaining to the award of contracts which make necessary the expenditure of public money. Accordingly, we must think upon the rule to be adopted in relation to the firm and salutary public policy involved. Frequently the security demanded is in a substantial amount. Manifestly, if an aspirant for the contract knew that it would not be required of him his competitive position would be improved over those vying with him. On its face that state of affairs is inimical to the public interest. The fact that the waiver is attended by good faith on both sides and is not harmful in the particular situation is not sufficient

to justify it. If erosion of the policy is to be avoided, even in such a state of affairs, the municipality cannot be permitted to breathe validity into an invalid bid by waiver. In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way. *Cf. Armitage v. Newark, supra,* 86 *N. J. L.* at *page* 10; *McQuillin, supra,* § 29.30. Only by this approach can the desirable protection be afforded to the taxpayers; only in this way can perfect equality be maintained among bidders. The fundamental principle, as well as the evil to be avoided, remain the same whatever the status of the person who challenges the action.

This viewpoint seems consonant with the general declarations of our courts. In *Waszen v. Atlantic City, supra,* this court said:

"The law is well settled that economy must be secured and fraud, favoritism and extravagance prevented to the end that all bidders will be on the same basis in matters material to the proposed municipal action. As said in *Tice v. Long Branch, supra,* and iterated in *Rankin v. Board of Education of Egg Harbor Twp., supra,* 'The rule is one which is rooted deep in sound principles of public policy by general application. It should be rigidly adhered to by the courts and not frittered away by a careless or indifferent application to specifications that are not clear, precise and definite on all matters that are material to the proposals, to which bidders are invited to compete.'" (1 *N. J.,* at *page* 283)

In the landmark case of *Case v. Trenton, supra,* the Court of Errors and Appeals used language which cannot be ignored:

"We must consider the public policy which underlies the requirements of competitive bidding. The purpose of the statute requiring competitive bidding is that each bidder, actual or possible, shall be put upon the same footing. The municipal authorities should not be permitted to waive any substantial variance between the conditions under which bids are invited and the proposals submitted. If one bidder is relieved from conforming to the conditions which impose some duty upon him, or lays the ground for holding him to a strict performance of his contract, that bidder is not contracting in fair competition with those bidders who propose to be bound by all the

conditions. This is the policy which prevents the modification of specifications after bids have been presented, and the awarding of the contract to one of the bidders based upon such revised specifications.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The presence of the condition may have deterred others from bidding who would have bid had they known that these conditions would be waived." (76 *N. J. L.* at *page* 700)

In this opinion it was said also that consideration of such a situation should not be confined to whether the contract consequent upon the waiver was a reasonable one or "as advantageous to the city as any contract which it will be likely to secure." (76 *N. J. L.* at *page* 699); and see *Dillon, Municipal Corporations,* § 807, *p.* 1214.

The soundness of similar statements in *Shaw v. Trenton,* 49 *N. J. L.* 339 (*Sup. Ct.* 1886), reversed on other grounds 49 *N. J. L.* 638 (*E. & A.* 1887), was recognized in *Inge v. Board of Public Works,* 135 *Ala.* 187, 33 *So.* 678 (*Sup. Ct.* 1903), where it was said:

"To require the bids upon one basis, and award the contract upon another, would, in practical effect, be an abandonment of all bids. *Wickwire v. City of Elkhart* [144 *Ind.* 305] (*Ind. Supp.*), 43 *N. E.* [216], 218. To the same effect, *People v. Board of Improvement,* 43 *N. Y.* 229; *Shaw v. City of Trenton,* 49 *N. J. Law* 339, 12 *Atl.* 902. \* \* \* To permit such in the awarding of public contracts by public officers would be to open wide the door for favoritism, and defeat the thing which the law intended to safeguard in requiring the contracts to be let upon bids made on advertised specifications. It is unimportant whether the additional stipulation contained in the contract awarded to one who is not the lowest responsible bidder be in itself an advantage to the city or not. If it constitutes a material change, and therefore a departure from the basis of the bidding, and becomes an element or consideration in the determination of who is the lowest and best bidder, it will invalidate the contract entered into."

Examination of all of the authorities to which reference has been made has led us to the conclusion that the efficacy of our competitive bidding statute depends upon its rigorous enforcement. Approval of a relaxation even to the extent sought in this instance would make necessary an evaluation in future cases of sensitive, subtle and subjective criteria,

and such a practice does not harmonize with the underlying objective of the Legislature. Accordingly, we hold that the defendant's nonconforming bid was not subject to acceptance by the township.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING and FRANCIS—4.

*For reversal*—Justices HEHER and JACOBS—2.