154 N.J. Super. 42 (1977)
380 A.2d 1161
RIVERLAND CONSTRUCTION COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
LOMBARDO CONTRACTING CO., INC., A CORPORATION, DEFENDANT-APPELLANT, AND TOWNSHIP OF BRIDGEWATER, A MUNICIPAL BODY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1977.
Decided November 21, 1977.
*43 Before Judges HALPERN, LARNER and KING.
Mr. Richard K. Rosenberg argued the cause for appellant Lombardo Contracting Co., Inc. (Messrs. Rosenberg & Waldman, attorneys; Mr. Michael O. Renda on the brief).
Mr. Richard M. Salsburg argued the cause for respondent Riverland Construction Company.
Mr. William W. Lanigan argued the cause for respondent Township of Bridgewater (Messrs. Lanigan, O'Connell and Hirsch, attorneys; Mr. Andrew R. Jacobs on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal arises out of a controversy relating to public bids for a sewer construction contract for a project planned by the Township of Bridgewater designated as "Charlotte Drive  Edgewood Terrace Area Sanitary Sewers." On August 1, 1977, after appropriate advertising, *44 the township received ten competitive bids, with Lombardo Contracting Co. (Lombardo) submitting the lowest and Riverland Construction Company (Riverland) the second lowest. Since all other proposals were higher and since the two lowest bidders were concededly responsible and qualified, the issue for determination by the municipality and the trial court focused upon the validity of these bids and the appropriateness of the remedy in the event of rejection.
Lombardo's overall bid was $324,140.98, whereas Riverland's bid amounted to $331,414. These bids compared favorably with the estimate of the township engineer in the sum of $343,163. However, the municipality rejected the two lowest bids of Lombardo and Riverland on the ground that they were "unbalanced," relying upon a reservation in the specifications that proposals may be rejected if the prices are obviously unbalanced. The other bids were also rejected for a variety of reasons and a resolution was adopted August 15, 1977 calling for readvertising for new bids.
Thereupon Riverland instituted an action in lieu of prerogative writs seeking a declaration that it was the lowest responsible bidder and an order compelling the township to award it the contract. Lombardo filed an answer denying Riverland's claim to the contract as well as a cross-claim asserting invalidity of the resolution rejecting the bids and its right to the contract as the lowest responsible bidder. The municipality took the position that the rejection of all bids was legally warranted.
The matter was considered by the trial judge at a plenary hearing on September 20 and resulted in a judgment dated October 3 setting aside the resolution rejecting Riverland's bid, directing the township to award the contract to Riverland, affirming the rejection of Lombardo's bid on the basis that it is "sham, non-responsive and contrary to statute," and enjoining the municipality from readvertising for new bids.
*45 Lombardo alone appeals from that judgment. After granting a stay of the judgment we accelerated the appellate process in order to accommodate the public interest in early completion of the project.
The issue before us focuses solely on one of 38 items in the proposal which sought a per cubic yard unit bid for select fill to cover the sewer pipe after installation. Since the exact amount of fill could not be ascertained in advance of the work, the township sought a unit price based on the engineer's estimate of a required quantity of 8,078 cubic yards.
Lombardo, in submitting its total bid, included the unit price of one cent per cubic yard for the select fill, while Riverland submitted a price of $1 a cubic yard. As extended, and based on the engineer's estimate, Lombardo's bid for this item was approximately $80, while Riverland's bid for the same item was approximately $8,000. The township engineer, on the other hand, estimated the reasonable cost for this item as $5 per cubic foot, or a total of approximately $40,000. Based on the advice of its engineer the township considered both bids for select fill so low as to be unbalanced. The trial judge agreed as to the Lombardo "penny" bid, but found that the $1 bid was not so nominal as to render it "unbalanced." It was on that basis that he proceeded to find the Lombardo bid invalid and the Riverland bid to be the lowest valid responsible bid.
We conclude that under the facts gleaned from this record the trial judge erred in its determination that the Lombardo bid was illegal.
In Stamato v. New Brunswick, 20 N.J. Super. 340 (App. Div. 1952), we held:
An unbalanced bid comprehends a bid based on nominal prices for some work and enhanced prices for other work. The mere fact that a bidder has submitted an unbalanced bid, does not automatically operate to invalidate an award of the contract to such bidder. There must be proof of collusion or of fraudulent conduct on the part of such bidder and the city or its engineer or other agent, or proof of other irregularity of such substantial nature as will operate to affect fair and competitive bidding. Phifer v. Bayonne, 105 N.J.L. *46 524 (Sup. Ct. 1929); Walter v. McClellan, 113 App. Div. 295, 99 N.Y.S. 78 (App. Div. 1906), affirmed 190 N.Y. 505, 83 N.E. 1133 (Ct. App. 1907). [at 344]
See also, the majority opinion in Armaniaco v. Cresskill, 62 N.J. Super. 476, 482-484 (App. Div. 1960).
The record herein concededly does not contain an allegation or proof of any irregularity, collusion or fraudulent conduct or intent by Lombardo or the township, its engineer or other representatives, which would operate to taint the fair and competitive bidding contemplated by the applicable statutes and judicial decisions. Nor does the record present any evidence that the prices submitted by Lombardo for other items of work in the contract were inflated in order to compensate for the nominal bid on the fill. Significantly, the total contract price was lower than the engineer's estimate for the cost of the project but not so inordinately low as to forebode default in performance.
Furthermore, the engineer's testimony dispels any inference that his estimate of 8,078 cubic feet was to any extent out of line with the quantity which would reasonably be required to comply with the work specifications. In fact, the physical reality of the determinable length and depth of the pipe in a practical sense dictated the requisite quantity of the fill.
In light of such a factual complex we are confronted with the question whether the submission of a "penny" or nominal bid, per se, for an item which is relatively minor in comparison with the total contract price of over $300,000, renders the lowest bid invalid. In our opinion, a nominal bid under such circumstances is not inherently evil or destructive of fair and competitive bidding. But see the concurring opinion of Judge Conford in Armaniaco v. Cresskill, supra. And in the absence of other factors which might undermine the salutary principles of fair and competitive bidding espoused in the leading case of Hillside Tp. v. Sternin, 25 N.J. 317 (1957), we conceive of no reason why *47 the taxpayers of the municipality should be deprived of the economic benefit of the lowest contract price.
The contractor, backed up by a performance bond, is required to complete the backfilling in accordance with the township's specifications whether he bids one cent, one dollar or five dollars a cubic yard for the fill. So long as there is no semblance of chicanery in relation to the potential quantity requirement of the fill item, no competing bidder is harmed and the public is benefited. Every contractor may apply his own business judgment in the preparation of a public bid, and his willingness to perform one of the items for a nominal amount is but his judgmental decision in an effort to underbid his competitors. See Walter v. McClellan, 113 App. Div. 295, 99 N.Y.S. 78 (App. Div. 1906), aff'd 190 N.Y. 505, 83 N.E. 1133 (Ct. App. 1907).
In the absence of a factual showing that such a decision subverts the principles of fair and competitive bidding there is no reason to invalidate the resulting bid. The pejorative connotation of the phrase "unbalanced bid" comes into play only when the nominal bid on one item is unbalanced because of an excessive bid on other items, or because of other elements pointing to fraud, collusion, unfair restriction of competition, or other substantial irregularity. Reasonable unbalancing is perfectly proper.
Riverland urges that a nominal "penny" bid is a sham and unresponsive to the invitation to bid by the municipality. From this premise it reasons that such a bid is equated with a substantial failure of compliance with the conditions of the bid invitations, citing the suggestion in the concurring opinion of Armaniaco v. Cresskill, supra, 62 N.J. Super. at 488-489, and the holding of the Supreme Court in Pucillo v. New Milford Mayor & Council, 73 N.J. 349 (1977).
This effort to equate a nominal bid with no bid is ill-suited. When a bidder utterly fails to bid on any item or alternate option, contrary to the mandatory requirements of the notice to bidders, the lack of conformance renders that *48 bid invalid. Pucillo v. New Milford Mayor & Council, supra. See also, Hillside Tp. v. Sternin, supra, 25 N.J. at 322-325. If such substantial noncompliance is tolerated it results in inequality and destruction of a common standard of competition among bidders and potential bidders.
In the instance of a failure to bid on a mandated item or option the defaulting contractor does not obligate himself to perform the work required or the option which may be selected by the municipality. He therefore avoids a risk to which other bidders, actual or potential, must commit themselves in the event they are awarded the contract. It is this element of disparity in the treatment of bidders which undermines the common standard of competition and leads to a declaration of invalidity. See Pucillo v. New Milford Mayor & Council, supra, 73 N.J. at 357-358.
In contrast to the foregoing, the submission of the nominal bid by Lombardo commits it to perform the portion of the work relating to back-filling, whether it does so at a profit or loss. It is a bid binding upon it which it cannot avoid if it is awarded the contract  a condition which is common to every contractor bidding on the project. Equating a nominal bid with a failure to bid is therefore unwarranted.
Riverland's reliance upon Boenning v. Brick Tp. Municipal Auth., 150 N.J. Super. 32 (App. Div. 1977), is also misplaced. In that case the issue involved the propriety of establishing in the specifications a minimum unit price for items of work and materials of an indeterminate quantity. We held that such a technique in an invitation to bid is permissible within the power of a local government agency if such agency deems it appropriate in order to avoid nominal or "penny" bids. This holding in no way supports the conclusion that a nominal bid or its acceptance by a municipality is invalid per se.
For the foregoing reasons we find that the Lombardo bid was valid and that it was the lowest responsible bidder, rather than Riverland, as found by the trial judge. Thus the award of the contract to Riverland was improper. The *49 portion of the judgment directing the township to accept the bid and award the contract to Riverland for the project known as "Charlotte Drive  Edgewater Terrace Area Sanitary Sewers" and the provision that the bid of Lombardo on that project "was properly rejected * * * as being sham, non-responsive and contrary to statute" are reversed.
The Township of Bridgewater has not taken an appeal from the judgment below and particularly from the provision thereof which enjoins it from readvertising for new bids. In view of this posture of the case, plus the absence of a contention by any other party that the township should proceed to invite new bids, we do not reach the question whether the municipality had the right under its reservation in the specifications to reject all bids under the factual circumstances herein. See M.A. Stephen Constr. Co. v. Rumson, 117 N.J. Super. 431 (App. Div. 1971); Cardell, Inc. v. Woodbridge Tp., 115 N.J. Super. 442 (App. Div. 1971), certif. den. 60 N.J. 236 (1972). As a consequence, in harmony with the views expressed in this opinion, we direct the entry of a judgment ordering the township to award the contract to Lombardo in accordance with its bid.