295 N.J. Super. 629 (1996)
685 A.2d 983
HALL CONSTRUCTION CO., INC., PLAINTIFF-RESPONDENT,
v.
NEW JERSEY SPORTS & EXPOSITION AUTHORITY, DEFENDANT-RESPONDENT, AND PRISMATIC DEVELOPMENT CORP., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1996.
Decided December 16, 1996.
*631 Before Judges SKILLMAN, A.A. RODRIGUEZ and CUFF.
Mark L. Fleder argued the cause for appellant (Connell, Foley & Geiser, attorneys; Theodore W. Geiser and Mr. Fleder, of counsel; John F. Neary on the brief).
Robert T. Lawless argued the cause for respondent Hall Construction Co., Inc. (Hedinger & Lawless, attorneys; Mr. Lawless on the brief).
Lawrence P. Cohen appeared for respondent New Jersey Sports & Exposition Authority (Courter, Kobert, Laufer & Cohen, attorneys; No brief was filed on behalf of this respondent).
The opinion of this court was delivered by CUFF, J.A.D.
This appeal concerns the award of a contract by the New Jersey Sports and Exposition Authority (Sports Authority) for the general construction work to construct luxury spectator suites at Giants Stadium. Prismatic Development Corp. (Prismatic), the purported low bidder, appeals from an order entered by Judge Ciolino which declared its bid materially defective and invalid. Pending the outcome of this appeal, the Sports Authority has tentatively awarded the contract to the next low bidder Hall Construction Co. (Hall). We affirm.
In 1995, the Sports Authority decided to construct luxury suites at Giants Stadium for sale to spectators. When the Sports Authority sought bids for the work, it divided the project into five contracts: (1) foundation; (2) structural steel; (3) general construction; (4) elevators; and (5) sports field lighting. The Sports Authority decided to construct the suites in two segments: north-side and south-side of the Stadium, and tentatively decided to *632 proceed only with the south-side suites at this time. In the belief that it might achieve some cost-savings if the foundations for the north-side suites were installed at the same time as the south-side suites, the Sports Authority requested the bidders on the foundation contract and the general construction contract to submit a bid for preliminary work associated with the north-side suites. It is Prismatic's response to this alternate in its bid for the general construction contract which is at issue in this case.
The Sports Authority solicited bids for general construction for the south-side suites in June 1996. Each bidder was requested to provide a lump sum bid. Each bidder was also directed to provide prices for three alternates: landscaping  north-side only (Alternate No. 1), lightning protection (Alternate No. 2), and architectural signage (Alternate No. 3).
The Authority received four bids for the general construction contract. By the time the bids were tabulated, the Sports Authority had decided to defer installation of the foundation for the north-side luxury suites which eliminated the need for Alternate 1. It also had decided to proceed with Alternates 2 and 3.
Cynthia Lorelli, Director of Purchasing for the Sports Authority, reviewed the bids for the general construction contract and prepared a bid tabulation sheet indicating the base bid, the bid for each alternate and the total price of the base bid plus the Alternates 2 and 3. Prismatic's bid contained a lump sum figure for the Base Bid, Alternate 2 and Alternate 3; Prismatic left the space next to Alternate 1 blank. On the tabulation sheet for the Prismatic bid, Lorelli recorded "No Bid" for Alternate 1. To determine the lowest bidder, the Sports Authority tabulated the bids for the base work and Alternates 2 and 3. Based on this calculation, the Sports Authority determined that Prismatic was the lowest bidder.
Hall filed a protest with the Sports Authority. It argued that Prismatic's bid should not be considered because it failed to include a bid for Alternate 1. The Sports Authority rejected the protest concluding that the failure to supply an amount for Alternate *633 1 was not a material defect. In a certification filed with the trial court, it stated its reasoning as follows:
Since the Authority was not proceeding with the foundation on the north side and, therefore, the bid for Alternate 1 would not be a factor, [it] agreed that it was nonmaterial and waived the defect to the extent one existed.
Hall, the next lowest bidder on the base bid, with a bid of $22,407,000, filed a verified complaint and order to show cause to enjoin the Sports Authority from awarding the contract to Prismatic and to declare the Prismatic bid materially defective. In an oral opinion, Judge Ciolino found that Prismatic's bid was materially deficient because of "failure to submit the appropriate price...." The matter was remanded to the Sports Authority to award the contract to one of the remaining bidders. Hall has been awarded the contract, subject to the disposition of this appeal.
Prismatic argues that the bid it submitted was responsive because it complied with the technical requirements of the bid specifications. Prismatic also urges that the Sports Authority decision to accept its bid and to reject Hall's protest is entitled to a presumption of validity. Hall disagrees, arguing that the Sports Authority does not have broad discretionary authority to determine whether a bid is materially defective.
The New Jersey Sports and Exposition Authority Law, N.J.S.A. 5:10-1 through -38, specifically N.J.S.A. 5:10-21.1.a, governs the award of this contract. Section 21.1.a provides that the contract
shall be awarded to that responsible bidder whose bid, conforming to the invitation for bids, is most advantageous to the authority, in its judgment, upon consideration of price and other factors. Any bid may be rejected when the authority determines that it is in the public interest to do so.
This statute is similar to the statute governing the award of a contract by a State agency, N.J.S.A. 52:34-12; therefore, reference to the cases interpreting and applying that statute is useful to resolve this issue.
In Commercial Cleaning Corp. v. Sullivan, 47 N.J. 539, 548, 222 A.2d 4 (1966), the Court held that the statutory standard to award *634 a state contract reflects a clear legislative purpose to grant the State Treasurer and the Director of Purchase and Property broad discretion. Consequently, the judicial standard for appraising the propriety of the exercise of discretion in awarding a state contract or in rejecting a bid or a bidder is "that the courts will not interfere in the absence of bad faith, corruption, fraud or gross abuse of discretion." Id. at 549, 222 A.2d 4.
In In re On-Line Games Contract, 279 N.J. Super. 566, 653 A.2d 1145 (App.Div. 1995), this court emphasized the distinction between the actual award of a contract and rejection of a bid or bidder and limited the gross abuse of discretion standard of review to the actual award of a contract. We emphasized that decisions concerning responsiveness of a bid, material defect of a bid, and bidder responsibility or suitability were to be tested by the ordinary standards governing administrative action. We said:
[B]idder responsibility and bid conformity are what guarantee that the goals underlying public bidding will be met. Through them the contracting unit is assured of equality among bidders, of the financial and ethical ability of the bidders to perform, and of performance of the contract in accordance with the RFP. No more deferential standard of review should be applied to these statutory mandates simply because a state contract is involved. State procurement is no less susceptible than local procurement to risks of favoritism, extravagance, improvidence or corruption. Indeed, strict rules as to bid conformity are critically important on the state level because of the broad discretion available to the Treasurer in actually awarding the contract.
[Id. at 592-93, 653 A.2d 1145.]
The express language of N.J.S.A. 5:10-21.1.a compels the conclusion that the Sports Authority's discretion is invoked only after it determines that the bid in question conforms to the invitation for bids.
The purpose of all bidding statutes is "to secure competition and `guard against favoritism, improvidence, extravagance and corruption,' in order to benefit the taxpayers and not the bidders." In re Honeywell Info. Sys., Inc., 145 N.J. Super. 187, 200-01, 367 A.2d 432 (App.Div. 1976), certif. denied, 73 N.J. 53, 372 A.2d 318 (1977) (quoting Township of Hillside v. Sternin, 25 N.J. 317, 322, 136 A.2d 265 (1957)). See also Keyes Martin & Co. v. Director, Div. of Purchase and Property, 99 N.J. 244, 256, 491 A.2d 1236 (1985). Therefore, public bidding statutes are to be *635 construed with sole reference to the public good and rigidly adhered to by the courts. Statewide Hi-Way Safety, Inc. v. New Jersey Dep't of Transp., 283 N.J. Super. 223, 230, 661 A.2d 826 (App.Div. 1995).
The law is clear that "where a party does not materially respond to the bid specifications he cannot be classified as a bidder at all, since the specifications are mandatory and jurisdictional." George Harms Constr. Co., Inc. v. Borough of Lincoln Park, 161 N.J. Super. 367, 374, 391 A.2d 960 (Law Div. 1978). The conditions and specifications of an invitation to bid must apply equally to all prospective bidders; the individual bidder cannot decide to follow or to ignore these conditions, thereby able to "estimate his bid on a basis different from that afforded to other contenders." Sternin, supra, 25 N.J. at 322-23, 136 A.2d 265 (citing Tice v. Commissioners of City of Long Branch, 90 N.J.L. 214 (E. & A. 1922); Armitage v. Mayor and Common Council of City of Newark, 86 N.J.L. 5 (Sup.Ct. 1914); Case v. Inhabitants of Trenton, 76 N.J.L. 696 (E. & A. 1909)). Accordingly, all bids must comply with the terms imposed. Any material departure from the bidding specifications "invalidates a nonconforming bid as well as any contract based upon it." Id. at 323, 136 A.2d 265. Stated differently, a nonconforming bid is no bid at all. In re On-Line Games Contract, supra, 279 N.J. Super. at 595, 653 A.2d 1145.
The bid instructions provided that "[e]ach price sheet attached... must be completely filled in and returned with Bid." The Terms and Conditions of the Bid provided that "[u]nit prices and totals, where applicable, must be inserted in space provided." Bidders were also directed to "[i]nsert prices for furnishing all or any portion of the material or articles described."
The Alternate Prices portion of the Advertised Bid document provided:
The following listed alternate prices shall apply to this bid....
Alternate Prices shall be all inclusive of the cost of materials, work, balancing and testing of mechanical and electrical systems as required, overhead and profit, supervision, administration, any and all other costs in connection therewith for work in place and accepted or omitted as the case may be, and shall hold for the same period as the bid.

*636 Bidder shall state amounts to be added to or subtracted [from] the base proposal for the alternates listed below.
The bidding instructions specified:
The Authority reserves the right to award a contract upon basis of lump sum for the entire work or upon basis of any base price or alternates of any combination of base prices or alternates which may best serve the interests of the Authority.
In addition, the instructions set forth specific grounds for rejection of bids. It provided:
7. CAUSE FOR REJECTION Condition, limitations or provisions attached to, or accompanying the request for Bid may cause its rejection.
In addition, Bids may be rejected (a) if the Bidder fails to comply with the provisions of Paragraph 6 herein [submitting request for bids]; (b) if the prices are obviously unbalanced; (c) if competition obviously has been suppressed; (d) if received from Bidders who have previously performed work for the State of New Jersey, the Authority, or some other New Jersey Authority in an unsatisfactory manner; (e) for nonconformance with "The New Jersey Prevailing Wage Act" ...; (f) if the request for Bid is not submitted on the Bid Form furnished; and (g) if it is deemed advisable to do so in the best interest of the Authority.
The Authority reserves the right to waive any or all irregularities and informalities in the submission of Bid documents.
Prismatic asserts that it intentionally left the space for a price for Alternate 1 blank because it decided not to charge anything for this work. It explains that it also submitted a bid for the foundation work and that, if it won both contracts, the net overlap in costs between the general construction and foundation projects allowed it to absorb the costs for Alternate 1. Prismatic's rationale, however, is not relevant to the initial consideration of whether the bid complied with the terms of the request for bids.
Prismatic acknowledges that the bid documents provided that the three alternates were a part of the bid. However, Prismatic contends that the language instructing the bidder to state "amounts to be added to or subtracted from" the base proposal excused its failure to insert any figure. It reasons that its decision not to charge for the north side landscaping neither added to nor subtracted from its base price proposal, and Prismatic argues that an amount was required to be inserted only if it altered its base price. Prismatic's reliance on this single sentence ignores the language of the rest of the document, including the immediately preceding language which clearly directs each bidder to provide a price for each alternate which is inclusive of all work *637 for that alternate. Moreover, the bidding instructions, read as a whole, required each bidder to provide a price for the general construction work plus a price for each alternate and a total price for the general construction work and each alternate. Prismatic's failure to insert a figure for Alternate 1 rendered its bid incomplete. We also conclude that this deviation was a material defect which required the Sports Authority to invalidate the entire bid.
To be legally acceptable, bids must not materially deviate from the specifications set forth by the contracting agency. Meadowbrook Carting Co., Inc. v. Borough of Island Heights, 138 N.J. 307, 314, 650 A.2d 748 (1994). Minor or inconsequential discrepancies and technical omissions can be waived. Ibid. Material conditions contained in bidding specifications cannot be waived by the contracting authority. Terminal Constr. Corp. v. Atlantic County Sewerage Auth., 67 N.J. 403, 411, 341 A.2d 327 (1975). A deviation is material if: (1) waiver of such defect deprives the purchaser of its assurance that the contract will be entered into, performed, and guaranteed according to the specified requirements, and (2) it adversely affects the competitive bidding process by placing a bidder in a position of advantage over other bidders, or by otherwise undermining the necessary common standard of competition. Meadowbrook Carting, supra, 138 N.J. at 315, 650 A.2d 748; Township of River Vale v. R.J. Longo Constr. Co., Inc., 127 N.J. Super. 207, 216, 316 A.2d 737 (Law Div. 1974).
As interpreted by the Sports Authority, Prismatic made no offer to do the work encompassed by Alternate 1. Without an offer to perform the work, Prismatic would not be bound to perform Alternate 1; thus, the Sports Authority had no assurance that the Alternate 1 work would be done if the contract was awarded to Prismatic. This deficiency turned out to be of no moment because the Sports Authority decided not to install the foundations for the north-side luxury boxes, thereby eliminating the need for landscaping to disguise the foundations. Nevertheless, we conclude that the failure to insert a number for the Alternate 1 work frustrated the competitive bidding process.
*638 Prismatic argues that it did submit a bid for Alternate 1. It contends that the blank meant that it would install the north-side landscaping at no cost to the Sports Authority. That may have been its intent; however, its intent was not communicated to the Sports Authority. Notably, the staff of the Sports Authority interpreted the blank space as a failure to bid to do this work. Undoubtedly, Prismatic could have submitted a nominal or no charge bid. However, there is a substantial distinction between a nominal or no charge bid and no bid at all. The latter renders the bid non-conforming and invalid when the bid specifications require a bid on each alternate. Riverland Constr. Co. v. Lombardo Contracting Co., Inc., 154 N.J. Super. 42, 47-48, 380 A.2d 1161 (App.Div. 1977), aff'd, 76 N.J. 522, 388 A.2d 626 (1978).
The failure to bid on all terms necessarily creates an inequality in the bidding and an opportunity for favoritism. Meadowbrook Carting, supra, 138 N.J. at 324-25, 650 A.2d 748. This inequality is created because the bidder who fails to bid on a mandated item or alternate does not obligate itself to perform the work and avoids a risk to which other bidders, actual or potential, must commit themselves, if awarded the contract. Riverland Constr. Co., supra, 154 N.J. Super. at 45, 380 A.2d 1161. Moreover, the omission of a cost item has been held per se material "even if it is unlikely that it could have affected the relative positions of the bidders" because it undermines the common standard of competition. In re On-Line Games Contract, supra, 279 N.J. Super. at 601-02, 653 A.2d 1145.
In L. Pucillo & Sons, Inc. v. Mayor and Council of the Borough of New Milford, 73 N.J. 349, 375 A.2d 602 (1977), the Court set forth several ways in which failure to bid on all proposals could undermine the competitive bidding process, even if the omitted bids were not included in the contract as awarded. In Pucillo, the municipality requested bid proposals for garbage collection for a duration of one, two, three and five years. The firm awarded the contract failed to submit a bid for the five year alternate. The Court found the failure to submit a bid for each alternate a material defect. It stated:

*639 We would have no objection to a procedure in which bidders were clearly told that they could select one or several options on which to bid. We are not, however, willing to transform the mandatory requirement in these specifications into a polite request. The ordinary reader of the specifications would regard them as calling for bids on all the terms specified. Awarding the contract to one who failed to submit bids on all terms necessarily created an inequality in the bidding and an opportunity for favoritism.
[Id. at 356, 375 A.2d 602.]
The deviation was found material, despite the municipal decision to award a three year contract. The Court noted that the bidder who failed to bid on the longest term gained a competitive advantage because the municipality's desire for a long-term contract may have discouraged other bidders. Id. at 357-58, 375 A.2d 602.
We are not prepared to say that the Sports Authority's post-bid opening decision to construct only the south-side luxury suites rendered the Prismatic deviation immaterial. First, the blank space for Alternate 1 rendered the Prismatic bid incomplete; it failed to include any bid on a mandated item. Second, many of the same factors discussed in Pucillo are present here. It is possible that the requirement that a bid be submitted for north-side landscaping work deterred other bidders. Because the bids for this work ranged from $400,000 to $800,000, the substantial cost of this alternate could have been the determinative factor in a bid award. By failing to submit a bid for the landscaping, Prismatic assumed less risk than the others, thereby placing itself on an unequal footing from its competitors. This factor alone compromised the competitive bidding process. The process was further frustrated when the Sports Authority declared the nonconformity immaterial. In essence, the Sports Authority impermissibly recast the bid specifications after bid opening. Sternin, supra, 25 N.J. at 326, 136 A.2d 265.
The submission of a non-conforming bid was a material deviation from the bid specifications which invalidated the Prismatic bid in its entirety. Accordingly, the order declaring the Prismatic bid invalid is affirmed.