687 A.2d 323

TURNER CONSTRUCTION COMPANY, A NEW YORK CORPORA-
TION, APPELLANT, v. NEW JERSEY TRANSIT CORPORA-
TION, A BODY CORPORATE AND POLITIC, AND R.M.
SHOEMAKER CO., A PENNSYLVANIA CORPORATION, RE-
SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1996—Decided January 22, 1997.

Before Judges PRESSLER, HUMPHREYS and WECKER.

*Steven E. Brawer* argued the cause for appellant (*Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen,* attorneys; *Mr. Brawer,* of counsel, and *Adrienne L. Isacoff,* on the brief).

*Kenneth M. Worton,* Deputy Attorney General, argued the cause for respondent New Jersey Transit Corporation (*Peter Verniero,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel, and *Worton,* on the brief).

*Richard R. Bonamo* argued the cause for respondent R.M. Shoemaker Co. (*Wilentz, Goldman & Spitzer,* attorneys; *Bonamo,* on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

Appellant, an unsuccessful bidder, challenges the award of a construction contract to R.M. Shoemaker Co. ("Shoemaker"), the lowest bidder. Appellant contends that the Shoemaker bid should have been rejected because it was untimely submitted and because it did not fully conform to the bidding specifications.

After a careful review of the record and the arguments presented, we affirm the agency's decision to award the contract to the lowest bidder.

I

According to the notice to bid, the bids had to be received at the New Jersey Transit ("NJT") Office on or before 3:00 p.m. on the designated day. The notice further provided that "bids received after the designated time will be considered late and not accepted."

At 3:00 p.m. that day, NJT had received three bids, including the appellant's bid. A NJT representative asked if there were any other bids in the room for delivery and then announced that the time to receive bids was closed. As the representative began to open the first bid, an administrative assistant on the NJT staff appeared in the doorway of the room with three persons. Each of the three persons represented an additional bidder. The assistant said that the three bidders had been sent by the security guard in the lobby to the wrong desk on the sixth floor and that they had arrived at that wrong location before 3:00 p.m.

After consulting with the Deputy Attorney General representing NJT, the representative decided to accept the three bids. He said that they would be accepted because each of the bidder's representatives had been in the building before 3:00 p.m. and had been misdirected by the security guard to the wrong receiving location on the sixth floor.

The six bids were opened and read. Shoemaker's bid at $38,-816,947 was lowest. Appellant's bid at $39,690,900 was the second lowest. Shoemaker was awarded the contract.

II

NJT is an instrumentality of the State. *See N.J.S.A.* 27:25–2; *N.J.S.A.* 27:25–11. Purchases, contracts or agreements of NJT are made or awarded only after public advertisement for bids in the manner set forth in the New Jersey Public Transportation Act of 1979. *N.J.S.A.* 27:25–11(a); *see also N.J.S.A.* 27:25–2; *N.J.S.A.* 27:25–11; Local Public Contracts Law, *N.J.S.A.* 40A:11–21; *D'Annunzio Bros. v. Transit Corp.*, 245 *N.J.Super.* 527, 531, 586 *A.*2d 301 (App.Div.1991).

Awards should be made "to the responsible bidder whose bid, conforming to the invitation for bids, will be the most advantageous to the State, price and other factors considered." *N.J.S.A.* 27:25–11(c). A contract involving a governmental instrumentality such as NJT "must be let only after the broadest opportunity for public bidding is given in order to secure competition, and guard against favoritism, improvidence, extravagance and corruption." *D'Annunzio Bros., supra,* 245 *N.J.Super.* at 532, 586 *A.*2d 301; *see also George Harms Const. v. New Jersey Turnpike Auth.,* 137 *N.J.* 8, 36, 644 *A.*2d 76 (1994) (the underlying operation and policy of the local public contracts law, *N.J.S.A.* 48:11–1 to –49, regarding competitive bidding is identical to that of the law, *N.J.S.A.* 27:23–6.1(a), which governs contracts and agreements by the New Jersey Turnpike Authority).

█ NJT may accept bids containing "minor informalities." *N.J.S.A.* 27:25–11(c); *see also Terminal Construction Corp. v. Atlantic County Sewerage Authority,* 67 *N.J.* 403, 411, 341 *A.*2d 327 (1975) (material conditions contained in bidding specifications may not be waived; however, minor or inconsequential discrepancies and technical omissions may be waived). In determining whether a defect may be waived, two factors are considered: (1) whether the effect of the waiver would be to deprive the public

body of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements; and (2) whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition. *See Meadowbrook Carting Co. v. Borough of Island Heights*, 138 *N.J.* 307, 315, 650 *A*.2d 748 (1994).

■ Also to be considered is the *prima facie* presumption that the power and discretion of the government has been properly exercised. *Miller v. Passaic Valley Water Commission*, 259 *N.J.Super.* 1, 14, 611 *A*.2d 128 (App.Div.), *certif. denied*, 130 *N.J.* 601, 617 *A*.2d 1222 (1992). However, this consideration must be balanced with the duty of the courts to be vigilant against the ever present risk of favoritism, improvidence, extravagance and corruption. *See Terminal Construction Corp., supra*, 67 *N.J.* at 410, 341 *A*.2d 327; *Hillside Township v. Sternin*, 25 *N.J.* 317, 322, 136 *A*.2d 265 (1957).

■ Applying these factors, we find that the brief delay in the submission of the Shoemaker bid under the circumstances here is not a material violation of public bidding law and procedures. Admittedly, the untimely submission was a technical violation. The regulations regarding NJT procurement procedures require that bids be submitted so as to be received in the office designated in the Invitation for Bids not later than the exact time set for opening of bids. *N.J.A.C.* 16:72–2.7. Further, the regulation provides that bids not received prior to or at the time designated for formal bid opening shall not be considered and shall be returned to the bidder unopened. *N.J.A.C.* 16:72–2.10. Additionally, the regulations require that "[t]o be considered for award, a bid must comply in all material respects with the Invitation for Bids so that, both as to the method and timeliness of submission . . . all bidders may stand on an equal footing and the integrity of the formal advertising system may be maintained." *N.J.A.C.* 16:72–2.11.

However, the regulations also authorize NJT to waive certain non-conformities in a bid proposal. *N.J.A.C.* 16:72–2.17 provides:

> (a) NJ TRANSIT reserves the right to waive any minor informalities or irregularities in a bid not in compliance with the specifications, terms and conditions of the Invitation for Bids.
>
> 1. A minor informality or irregularity is one which is merely a matter of form or is some immaterial variation from the exact requirements of the Invitation for Bids, having no effect on quality, quantity or delivery of the supplies or performance of work being procured, and the correction or waiver of which would not affect the relative standing of, or be otherwise prejudicial to, other bidders.
>
> 2. NJ TRANSIT may give the bidder the opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid, or may waive any such deficiency where it is to the advantage of NJ TRANSIT.

Furthermore, award of a contract to a late bidder has been approved in two of our decisions. *William M. Young & Co. v. West Orange Redevelopment Agency,* 125 *N.J.Super.* 440, 444–45, 311 *A.*2d 390 (App.Div.1973) (bidder was held up by inclement weather; the court found no disadvantage to the other bidders); *Kingston Bituminous Products Co. v. New Jersey Turnpike Auth.,* 80 *N.J.Super.* 25, 36, 192 *A.*2d 836 (App.Div.1963) (a delay in opening the bids caused by a bidder being held up in traffic).

In *Young,* we said that there was no indication of fraud or collusion and that the delay was a minor irregularity which was "properly waived by the agency under its inherent discretionary power ancillary to its duty to secure, through competitive bidding, the lowest responsible offer." *William M. Young & Co., supra,* 125 *N.J.Super.* at 444–45, 311 *A.*2d 390.

Here, as in *Young,* we find no suggestion of fraud or collusion nor significant disadvantage to any of the other bidders. The delay was very short. The other bids had not been opened and read. The delay was not intentional or for the purpose of obtaining any competitive advantage. NJT properly exercised its discretion by waiving this minor deviation in order to protect the public interest in obtaining the lowest bid.

## III

■  Appellant argues that in two respects the Shoemaker bid is non-conforming or non-responsive.  The first is the failure of Shoemaker to initial a cross-out in its lump sum bid price for one item.  Shoemaker bid zero dollars for that item.  Next to the bid was a number which had been crossed out.  NJT's pre-award general provisions required that each erasure or other change be initialed by the person signing the bid.  Another provision required that the person signing the bid proposal be an authorized officer of the corporation.  *N.J.A.C.* 16:72–2.16 provides that "[p]rice changes in bids shall be initialed by the vendor and the price submitted to NJ Transit."

NJT concluded that this was a "minor waivable deficiency."  In its letter rejecting appellant's objection to the award of the contract, NJT stated "[t]he speculation of [appellant] that Shoemaker could have used this lapse to disclaim its bid is just that— speculation.  Shoemaker could not successfully do so since NJ Transit would not permit it to rely upon such an inconsequential defect in its bid."  NJT also informed appellant in the letter that despite the failure of Shoemaker to initial the bid change, it was "absolutely clear to NJT what is the bidder's intention."  We agree that the cross-out was a minor deficiency which could be waived.  No purpose would be served in rejecting this low bid for such a picayune reason.

■  Appellant's second argument is that the bidder's zero dollar bid for the item is equivalent to no bid at all and that this makes the entire bid unbalanced.  Under the pre-award general provisions, a proposal that contains prices that are obviously unbalanced will be considered irregular and may be rejected;  also, where no figure is provided by the bidder, the bid will be considered to be non-conforming and shall be rejected.

■  An unbalanced bid is one "based on nominal prices for some work and enhanced prices for other work;" *Frank Stamato & Co. v. City of New Brunswick,* 20 *N.J.Super.* 340, 344, 90 *A.2d*

34 (App.Div.1952). However, a "reasonable unbalancing is perfectly proper." *Riverland Construction Co. v. Lombardo Contracting Co.*, 154 *N.J.Super.* 42, 47, 380 *A.*2d 1161 (App.Div.1977), *aff'd*, 76 *N.J.* 522, 388 *A.*2d 626 (1978). Thus, the submission of an unbalanced bid standing alone does not invalidate the bid. *Frank Stamato & Co., supra*, 20 *N.J.Super.* at 344, 90 *A.*2d 34.

The submission of a zero bid is similar to that of a nominal "penny" bid. A nominal bid is not "inherently evil or destructive of fair and competitive bidding." *Riverland Construction Co., supra*, 154 *N.J.Super.* at 46, 380 *A.*2d 1161. "Every contractor may apply his own business judgment in the preparation of a public bid, and his willingness to perform one of the items for a nominal amount is but his judgmental decision in an effort to underbid his competitors." *Id.* at 47, 380 *A.*2d 1161.

As we stated in *Riverland:*

[i]n the absence of a factual showing that such a decision subverts the principles of fair and competitive bidding there is no reason to invalidate the resulting bid. The pejorative connotation of the phrase 'unbalanced bid' comes into play only when the nominal bid on one item is unbalanced because of an excessive bid on other items, or because of other elements pointing to fraud, collusion, unfair restriction of competition or other substantial irregularity. Reasonable unbalancing is perfectly proper.

[*Ibid.; cf. Hall v. N.J. Sports & Exposition Authority*, 295 *N.J.Super.* 629, 685 *A.*2d 983 (App.Div.1996) (A nominal or no charge bid is not the same as no bid at all and the latter may be a material deviation).]

Here, the Transit Authority concluded that there was no proof of collusion or fraudulent conduct on the part of the bidder or the procuring agency nor was there proof of any other substantial irregularity affecting fair and competitive bidding. Accordingly, the authority concluded, and we agree, that this objection is without merit.

In sum, the deficiencies and irregularities were minor and therefore waivable, especially where, as here, there is no evidence of fraud, favoritism, corruption or any improper competitive advantage.

Affirmed.